## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### CHARLESTON DIVISION

| | | |
|---|---|---|
| **JORDAN J. GOARD,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| **v.** | ) | **Civil Action No. 2:22-00470** |
| | ) | |
| **DONNIE AMES, Superintendent,** | ) | |
| | ) | |
| **Respondent.** | ) | |

### PROPOSED FINDINGS AND RECOMMENDATION

Pending before the Court are the following: (1) Respondent's "Motion to Dismiss and for Summary Judgment" (Document No. 14), filed on April 28, 2023; (2) Petitioner's "Motion for Stay and Abeyance" (Document No. 18) filed on May 15, 2023; and (3) Petitioner's second "Motion for Stay and Abeyance" (Document No. 23), filed on December 18, 2023. By Standing Order, the above case was referred to the undersigned United States Magistrate Judge for submission of proposed findings of fact and a recommendation for deposition pursuant to 28 U.S.C. § 636(b)(1)(B). (Document No. 4.) Having thoroughly examined the record in this case, the undersigned respectfully recommends that the District Court grant Respondent's "Motion to Dismiss and for Summary Judgment" (Document No. 14) and deny Petitioner's Motions for Stay and Abeyance (Document Nos. 18 and 23).

### PROCEDURAL HISTORY

1. **Criminal Action No. 17-F-17:**

On January 10, 2017, a Fayette County grand jury indicted Petitioner on one count of Conspiracy to Commit a Felony, one count of First Degree Robbery, and one count of Grand

Larceny.[1] (Document Nos. 11-1 and 11-2.) On April 22, 2017, following a two-day jury trial, Petitioner was convicted of Conspiracy to Commit a Felony and First Degree Robbery. (Id.) Petitioner filed a Motion for New Trial on May 1, 2017. (Id.) On June 16, 2017, the Circuit Court sentenced Petitioner to an indeterminate term of one year to five years of incarceration as to his conspiracy conviction and a determinate term of sixty years of incarceration for his first-degree robbery conviction. (Id.) By Order entered on July 31, 2017, the Circuit Court denied Petitioner's Motion for New Trial. (Id.)

On August 11, 2017, Petitioner, by counsel, Joseph M. Mosko, filed his Notice of Appeal with the Supreme Court of Appeals of West Virginia ("SCAWV"). (Document No. 11-6.) Petitioner asserted the following assignments of error: (1) The Circuit Court erred in admitting the surveillance footage from Plateau Oaks without a sufficient foundation; (2) The Circuit Court erred "in prohibiting cross-examination of Ms. Maddox on comments she overheard about Ms. Cummings's purported 'reputation for engaging in various and sundry drug-related activities;" (3) The Circuit Court erred in overruling Petitioner's objection to statements made by the prosecutor in closing argument. (Document No. 11-2.) By a Memorandum Decision entered on June 15, 2018, the SCAWV affirmed the Circuit Court's denial of Petitioner's Motion for New Trial. State v. Goard, 2018 WL 3005955 (W.Va. June 15, 2018) ("Goard I"). Petitioner did not file a petition for writ of certiorari with the United States Supreme Court.

On December 28, 2019, Petitioner filed a Motion for Reconsideration of Sentence pursuant to Rule 35(b). (Document No. 11-3.) By Order entered on January 4, 2019, the Circuit

---

[1] The Grand Larceny count was subsequently dismissed. (Document Nos. 11-1 and 11-2.)

Court denied Petitioner's Motion. (Document No. 11-4.) On May 10, 2019, Petitioner filed an additional Rule 35(b) Motion requesting that the Circuit Court reconsider his sentence based upon his rehabilitative measures undertaken during incarceration. (Document No. 11-5.) The Docket Sheet does not reflect an order resolving this motion. (Document No. 11-1, p. 4.)

**2.**    **State _Habeas_ Petition:**

On July 19, 2019, Petitioner, acing _pro se_, filed a Petition for Writ of _Habeas Corpus_ in the Circuit Court of Fayette County. Goard v. Ames, Case No. 19-C-105 (Cir. Ct. Fayette Co.); (Document No. 11-9.) As grounds for relief, Petitioner asserted the following:

1.    Ineffective Assistance of Counsel:
    a.    Trial counsel failed to work with and communicate with his co-defendant's attorney, evaluate, consider, and take into account his co-defendant's defense strategy;

    b.    Trial counsel failed to obtain an expert to enhance the video of the crime which was grainy and distorted to the point that nobody was identifiable;

    c.    Trial counsel failed to undertake an independent investigation;

    d.    Trial counsel failed to object to the introduction of 'white powdery substance' into evidence;

    e.    Trial counsel failed to effectively cross-examine Chief Perdue; and

    f.    Appellate counsel failed to investigate and raise viable and substantive grounds on direct appeal.

2.    Petitioner's constitutional right to a fair trial was violated when the Court allowed the introduction of a 9 mm handgun, clip, bullets, and holster into evidence over a relevancy objection by the defense.

3.    Petitioner's constitutional right to a fair trial was violated when the Court refused to sever the trial and forced Petitioner to be tried in unitary trial with his co-defendant.

4.    Petitioner's constitutional right to a fair trial was violated when the Court allowed the jury to view the entire surveillance video during deliberations

when only a portion of the video was used in the State's case-in-chief;

5.    Petitioner's constitutional right to a fair trial was violated when the Court allowed the State to badger defense witness Joseph Lee over defense objection regarding his failure to identify the Petitioner as the "black man" who was beating up the girl over defense objection because the questioning was outside the scope of direct examination; and

6.    Petitioner's constitutional right to a fair trial was violated when he was convicted of conspiracy against the weight of the evidence.

(Id.)

By Order entered on September 27, 2019, the Circuit Court appointed *habeas* counsel.

(Document No. 11-10, p. 3.) On April 27, 2020, Petitioner, by counsel, Nigel E. Jeffries, filed his

Amended *Habeas* Petition asserting the following grounds for relief:

1.    <u>Prejudicial joinder</u>: Petitioner's due process right to a fair trial under the Fifth and Fourteenth Amendments to the United States Constitution and Article III, § 10 of the Constitution of the State of West Virginia Constitution was violated by the prejudicial joinder of Petitioner's trial with that of his co-defendant.

2.    <u>Ineffective Assistance of Counsel</u>: Petitioner was denied the effective assistance of counsel guaranteed by the Sixth and Fourteenth Amendments of the United States and Article III, § 14 of the Constitution of the State of West Virginia by the individual and accumulated professional errors of trial and appellate counsel.

    A.    Counsel was ineffective during the critical plea bargaining stage;

    B.    Counsel was ineffective before trial by failing to investigate;

    C.    Counsel was ineffective for failing to obtain the grand jury transcripts;

    D.    Counsel was ineffective at trial by failing to object to the introduction of the "white powdery substance" when no foundation for said evidence existed;

    E.    Counsel was ineffective at trial by failing to request a jury instruction that the taking of property was merely incidental to the commission of another crime pursuant to *State v. Plumley*;

4

F. Counsel was ineffective at trial by failing to identify and object to the faulty robbery jury instruction;

G. Counsel was ineffective at trial in failing to object to the highly prejudicial statements of the prosecutor during the State's closing and rebuttal argument;

H. Counsel was ineffective post-conviction for failing to raise multiple meritorious grounds on direct appeal; and

I. The cumulative effect of counsel's substantial professional errors.

3. <u>Prejudicial remarks by Prosecutor</u>: Petitioner's due process rights to a fair trial guaranteed by the Fifth and Fourteenth Amendment to the United States Constitution and Article III, § 10 of the Constitution of the State of West Virginia was violated by the numerous and extensive prejudicial remarks of the Prosecutor.

A. Prosecutor arguing highly prejudicial facts not in evidence;

B. Prosecutor asserted personal opinion concerning Petitioner's guilt;

C. Prosecutor asserted personal opinion concerning defense witnesses' credibility;

D. Prosecutor asserted personal opinion concerning the credibility of a State's witness; and

E. Cumulative effect of Prosecutor's numerous prejudicial statements.

4. <u>Defective robbery instruction</u>: Petitioner's right to due process under the Fifth and Fourteenth Amendments to the United States Constitution and Article III, § 10 of the Constitution of the State of West Virginia was violated by a defective robbery jury instruction.

5. <u>Failure to instruct</u>: Petitioner's right to due process under the Fifth and Fourteenth Amendments to the United States Constitution and Article III, § 10 of the Constitution of the State of West Virginia was violated when the Court did not instruct the jury that they could find Petitioner's conduct incidental to the commission of another principal crime.

6. <u>Sufficiency of the evidence</u>: Petitioner's right to due process under the Fifth and Fourteenth Amendments to the United States Constitution and Article III, § 10 of the Constitution of the State of West Virginia was

5

violated when he was convicted based on insufficient evidence.

7.  <u>Disproportionate sentence</u>: Petitioner's right to due process under the Fifth and Fourteenth Amendments to the United States Constitution and Article III, § 10 of the Constitution of the State of West Virginia as Petitioner's sentence is disproportionate to the nature of the offense.

8.  <u>Challenges to the composition of the grand jury and its procedure</u>.

9.  <u>Cumulative Error</u>: Petitioner's right to due process under the Fifth and Fourteenth Amendments to the United States Constitution and Article III, § 10 of the Constitution of the State of West Virginia was violated by the accumulative of errors.

(<u>Id.</u>) Additionally, Petitioner, by counsel, filed a *Losh* List asserting the following: (1) Prejudicial joinder; (2) Ineffective assistance of counsel; (3) Prejudicial statements by prosecutor; (4) Defective robbery jury instruction; (5) Failure to instruct; (6) Sufficiency of the evidence; (7) Excessive sentence; (8) Challenges to the composition of the grand jury or its procedures; and (9) Cumulative error. (<u>Id.</u>, p. 3.) On June 10, 2020, Petitioner, by counsel, filed a Motion for Summary Judgment as to Grounds One, Three, Four, Five, Six, Seven, and Nine. (Document Nos. 11-11 and 11-12.) Petitioner further moved to abandon his claim that counsel was ineffective in failing to obtain grand jury transcripts and his challenge to the composition of the grand jury or its procedures (Grounds Two (C) and Eight). (<u>Id.</u>) The Circuit Court conducted an omnibus hearing on October 8, 2020. (Document No. 11-13.) The Circuit Court heard testimony from the following: (1) Joseph Mosko, Petitioner's trial and appellate counsel; and (2) Petitioner. (<u>Id.</u>) By Order entered on April 12, 2021, the Circuit Court denied Petitioner's *habeas* Petition. (Document No. 11-14.)

Petitioner, by counsel, Crystal L. Walden, filed his appeal concerning the Circuit Court's decision denying his *habeas* Petition. (Document No. 11-15.) On August 12, 2021, Petitioner

filed his brief raising the following grounds:

1.    Trial counsel was ineffective for failing to object to improper prosecutorial statements, failing to request an incident jury instruction, and failing to object to the introduction of irrelevant and prejudicial evidence.

    A.    Counsel was ineffective for failing to object to the prosecutor's improper statements during State's closing and rebuttal arguments:

        1.    The prosecutor referred to a non-defendant bystander as a 'boss' leading the jury to draw impermissible inferences;

        2.    The prosecutor wrongly asserted personal opinion concerning Petitioner's guilt and credibility of witnesses.

    B.    Counsel was ineffective by failing to request an instruction informing the jury that it could find Petitioner's conduct incidental to the commission of another principal crime;

    C.    Counsel was ineffective by failing to object to the admission of a white powdery substance.

2.    The cumulative effect of counsel's ineffective assistance resulted in an unfair trial and violated Petitioner's due process rights;

3.    The evidence in the record is insufficient from which a reasonable jury could conclude, beyond a reasonable doubt, that Petitioner is guilty of conspiracy to commit a felony.

(Id.) On September 15, 2021, the State filed its Brief. (Document No. 11-16.) Petitioner, by counsel, filed his Reply on October 5, 2021 (Document No. 11-17.) By Memorandum Decision filed on May 26, 2022, the WVSCA affirmed the decision of the Circuit Court. (Document No. 11-18.); Goard v. Ames, 2022 WL 1684661 (W. Va. May 26, 2022) ("Goard II").

**3.    Instant Section 2254 Petition:**

On October 26, 2022, Petitioner, acting *pro se*, filed the instant Petition under 28 U.S.C. § 2254 for Writ of *Habeas Corpus* by a Person in State Custody. (Document No. 2.) In his Petition, Petitioner asserts the following grounds for relief:

1.      Ineffective Assistance of Counsel:

    A.      Trial counsel failed to undertake an independent investigation and property prepare himself prior to trial;

    B.      Trial counsel failed to object to prejudicial evidence introduced to the jury and admitted into evidence;

    C.      Trial counsel failed to request adequate jury instruction;

    D.      Trial counsel failed to identify and object to faulty robbery instruction;

    E.      Trial counsel failed to object to improper and inflammatory remarks made by the prosecutor during the closing and rebuttal argument; and

    F.      Appellate counsel failed to raise multiple meritorious grounds on direct appeal.

2.      Prejudicial statements made by prosecutor during closing and rebuttal argument.

    A.      Prosecutor inflamed the passion of the jury;

    B.      Prosecutor bolstered and/or vouched for the credibility of the State's witness;

    C.      Prosecutor asserted his personal opinion to the incredibility of the defense witnesses;

    D.      Prosecutor purposely misstated evidence and/or misled the jury; and

    E.      Prosecutor argued facts that was not in evidence.

3.      Insufficient evidence;

4.      Disproportionate sentence;

5.      Failure to Instruct;

6.      Prejudicial joinder;

7.      Defective robbery instruction;

8.     Cumulative error.

(Id.) On December 2, 2022, Petitioner paid the $5.00 filing fee. (Document No. 6.) By Order entered on December 5, 2022, the undersigned noted that a preliminary review of the Petition revealed that the Petition may be time-barred. (Document No. 7.) Thus, the undersigned directed the Respondent to file a limited Response addressing the timeliness of Petitioner's Petition. (Id.) On January 17, 2023, Respondent filed a Limited Response stating that Petitioner's Section 2254 Petition "is timely filed pursuant to 28 U.S.C. § 2244(d)(1)." (Document No. 11.) In support of Respondent's "Limited Response", Respondent attached the following Exhibits: (1) The Docket Sheet concerning Petitioner's underlying criminal proceedings in the Fayette County Circuit Court concerning Case Number 17-F-17 (Document No. 11-1); (2) A copy of State v. Goard, 2018 WL 3005955 (W.Va. June 15, 2018) (Document No. 11-2); (3) A copy of Petitioner's "Motion for Reconsideration of Sentence" as filed in Case No. 17-F-17 (Document No. 11-3); (4) A copy of the Circuit Court's "Order Denying Rule 35(b) Motion for Reconsideration of Sentence" (Document No. 11-4); (5) A copy of Petitioner's second "Motion for Reconsideration of Sentence" as filed in Case No. 17-F-17 (Document No. 11-5); (6) A copy of Petitioner's Brief as filed with the SCAWV on December 4, 2017 (Document No. 11-6); (7) Petitioner's Petition for Appeal filed with the SCAWV on February 10, 1999 (Document No. 13-7); (8) The Docket Sheet concerning the State *habeas corpus* proceeding, Case Number 19-C-105, as filed in the Circuit Court of Fayette County (Document No. 11-8); (9) Petitioner's *pro se* Petition for Writ of *Habeas Corpus* filed on July 19, 2019 in the Circuit Court of Fayette County (Document No. 11-9); (10) A copy of Petitioner's Amended Petition as filed by counsel on April 27, 2020 (Document No. 11-10); (11) A copy of Petitioner's Motion for Summary Judgment as filed in

Case No. 19-C-105 (Document Nos. 11-11 and 11-12); (12) A copy of the transcripts of Petitioner's omnibus hearing conducted on October 8, 2020 (Document No. 11-13); (13) A copy of the Circuit Court's "Order Denying and Dismissing Petition" entered on April 12, 2021(Document No. 11-14); (14) A copy of Petitioner's Brief as filed with the SCAWV concerning his *habeas* appeal (Document No. 11-15); (15) A copy of Respondent's Brief as filed with the SCAWV on September 15, 2021 (Document No. 11-16); (16) A copy of Petitioner's Reply Brief as filed with the SCAWV on October 5, 2021 (Document No. 11-17); and (17) A copy of Goard v. Ames, 2022 WL 1684661 (W.Va. May 26, 2022) (Document No. 11-18).

On February 21, 2023, the undersigned issued an Order directing Respondent to file an answer to the allegations contained in Petitioner's Petition to show cause why his request for *habeas* relief should not be granted and to include copies of court and other records that would facilitate determination of the issues raised as well as include a paragraph indicating whether or not Petitioner has exhausted his state remedies. (Document No. 12.) On April 29, 2023, Respondent filed his "Motion to Dismiss and for Summary Judgment" as well as an accompanying "Memorandum of Law in Support of Motion to Dismiss and for Summary Judgment." (Document Nos. 14 and 15.) As an Exhibit, Respondent attaches a copy of the trial transcripts. (Document Nos. 14-1 and 14-2.)

On May 1, 2023, Notice pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), was issued to Petitioner, advising him of the right to file a response to Respondent's "Motion to Dismiss and for Summary Judgment." (Document No. 17.) On May 15, 2023, Petitioner filed a Motion for Stay and Abeyance. (Document No. 18.) On August 30, 2023, Petitioner filed his Response in Opposition to Respondent's "Motion to Dismiss and for Summary Judgment."

(Document No. 22.) On December 18, 2023, Petitioner filed his second Motion for Stay and Abeyance. (Document No. 23.)

## FACTUAL BACKGROUND

In July 2016, Bryanna Dawn Cummings engaged with law enforcement to cooperate in drug interdiction work. (Document No. 14-1, pp. 103-04.) Ms. Cummings was paid by law enforcement to be a confidential informant ("CI/victim") and advise law enforcement who was selling drugs. (Id.) On August 3, 2016, the CI/victim identified Petitioner as a drug dealer who sold cocaine. (Id., p. 104.) The CI/victim called Petitioner and arranged to buy cocaine from him. (Id., pp. 104-05.) Chief Rod Perdue of the Central West Virginia Drug Task Force equipped the CI/victim with a purse containing recording equipment and cash for a controlled buy. (Id., p. 106.) Chief Perdue dropped off the CI/victim at the Plateau Oak Apartments in Fayette County, where she was scheduled to meet Petitioner, and moved his vehicle down the street. (Id., pp. 107-08.) The CI/victim met the Petitioner in the breezeway where she purchased one half gram of cocaine from Petitioner for $50.00. (Id., p. 108.) The CI/victim placed the cocaine in her bra and started walking away. (Id.) Petitioner then yelled at her, but then told her he would talk to her later. (Id., pp. 108-09.) As the CI/victim began walking away again, Petitioner yelled at her and grabbed her purse. (Id., pp. 109-10.) Petitioner and the CI/victim argued because she refused to give Petitioner her purse. (Id.) The CI/victim stated that Petitioner "kept pulling harder and harder" on her purse. (Id., p. 110.) Petitioner then picked up the CI/victim like in a bear hug and carried her closer to the apartment building. (Id., p. 111.) The CI/victim testified that she tried to get her phone to call law enforcement, but she was unable to do so. (Id.) Petitioner then "slammed" the CI/victim on the ground, tried to jerk the purse off her shoulder, and repeatedly

instructed the CI/victim to "give me the purse." (Id., pp. 111-12.) At the time this was occurring, co-defendant Rob Lee walked outside asking what was going on. (Id., p. 113.) Petitioner told Lee "[s]he's wearing a wire. She has a wire." (Id.) Lee then approached the two, pulled a black handgun, and pointed the gun at the CI/victim directing her to give Petitioner the purse or he would shoot her. (Id.) Petitioner then struck the CI/victim in the back of the head and the CI/victim turned face down to the ground because she feared she was going to be shot. (Id., p. 114.) Petitioner then jerked the purse from the CI/victim and took her cocaine. (Id., pp. 114-15.) The CI/victim then ran towards the law enforcement officers. (Id., p. 114.) Chief Perdue saw the CI/victim running and disheveled without the purse. (Id., pp. 143-45.) The recording equipment that was inside the purse was valued at $1,095.00. (Id., p. 145.) Surveillance cameras at the apartment complex captured the above altercation. (Id., p. 117.) Chief Perdue and Sergeant Young of the Central West Virginia Drug Task Force entered the apartment complex after backup arrived. (Id., pp. 146-47.) The officers discovered the suspects had fled and began their investigation. (Id.) Sergeant Young found a baggie containing a white powdery substance inside the apartment where Lee was known to stay and from where Petitioner exited when meeting the CI/victim. (Id., pp. 162-64, 170-72.) Officer Richard Stephenson discovered the CI/victim's purse in a dumpster behind a local nursing home, but the camera was gone. (Id., pp. 154-56.)

## THE APPLICABLE STANDARDS

Federal *habeas* relief is available to a State prisoner under 28 U.S.C. § 2254, only if the prisoner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a)(2002); See also Sargent v. Waters, 71 F.3d 158, 160 (4th Cir. 1995). Section 2254(d) provides that when the issues raised in a Section 2254 Petition were raised and

considered on the merits in State Court *habeas* proceedings, federal *habeas* relief is unavailable unless the State Court's decision:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

To trigger the above AEDPA deference, a State Court's decisions must be "adjudicated on the merits." Gordon v. Braxton, 780 F.3d 196, 202 (4th Cir. 2015)(If the State court's decision does not qualify as an "adjudication on the merits," AEDPA deference is not triggered and the Court must review the issue *de novo*.). A claim is "adjudicated on the merits" if the claim "is exhausted in state court and not procedurally defaulted." Gray v. Zook, 806 F.3d 783, 798 (4th Cir. 2015)(citation omitted); also see Thomas v. Davis, 192 F.3d 445, 455 (4th Cir. 1999)(explaining that a claim has been adjudicated upon the merits where the claim was "substantively reviewed and finally determined as evidenced by the state court's issuance of a formal judgment or decree"); Matthews v. Evatt, 105 F.3d 907, 911 (4th Cir. 1997), *abrogation on other grounds recognized*, United States v. Barnett, 644 F.3d 192 (4th Cir. 2011)(Exhaustion requires that a claim be "fairly presented," such that the claim was presented face-up and squarely, providing an opportunity for review by the highest state court.) It is a case-specific inquiry as to whether a claim has been "adjudicated on the merits," but a "claim is not 'adjudicated on the merits' when the state court makes its decision 'on a materially incomplete record.'" Braxton, 780 F.3d at 202 (citing Winston v. Kelly (Winston I), 592 F.3d 535, 544 (4th Cir. 2010)(The record may be materially incomplete if a state court "unreasonably refuses to permit further development of the facts.") The Fourth Circuit has explained that where a state court "unreasonably refuses to permit

13

further develop of the facts," it passes up the opportunity that exhaustion ensures. Winston v. Pearson (Winston II), 683 F.3d 489, 496 (4th Cir. 2012)(exhaustion requires that a state court have an opportunity to apply the law and consider all relevant evidence to petitioner's claim). Additionally, the "adjudication on the merits" requirement does not exclude "claims that were decided in state court, albeit in a summary fashion." Thomas v. Taylor, 170 F.3d 466, 475 (4th Cir. 1999); also see Winton II, 683 F.3d at 502(discussing Harrington v. Richter, 562 U.S 86, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011)(noting that although a state court's summary denial may be presumed an "adjudication on the merits," a federal court may still find that the state court did not adjudicate a claim on the merits if the thoroughness of the state court's development of the record is challenged and there was a materially incomplete record before the state court.) When a state court summarily rejects a claim and does not set forth its reasoning, the federal court independently reviews the record and clearly established Supreme Court law. Bell v. Jarvis, 236 F.3d 149 (4th Cir.), cert. denied, 524 U.S. 830, 122 S.Ct. 74, 151 L.Ed.2d 39 (2001). The Court, however, must still "confine [it's] review to whether the court's determination 'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" Id. at 158; also see Harrington, 562 U.S at 98 – 99, 131 S.Ct. at 770("Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief. This is so whether or not the state court reveals which of the elements in a multipart claim it found insufficient, for § 2254(d) applies when a 'claim,' not a component of one, has been adjudicated.").

In Williams v. Taylor, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000), the

Supreme Court stated that under the "contrary to" clause in § 2254(d)(1), a federal *habeas* Court may grant *habeas* relief "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 412-13, 120 S.Ct. at 1523. A federal *habeas* Court may grant relief under the "unreasonable application" clause of § 2254(d)(1) where the State Court identified the appropriate Supreme Court precedent but unreasonably applied the governing principles. Id.(A "federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly."); also see Woods v. Donald, 575 U.S. 312, 135 S.Ct. 1372, 191 L.Ed.2d 464 (2015)(*per curiam*)(For a state court's decision to be an unreasonable application of clearly established federal law, the ruling must be "objectively unreasonable, not merely wrong; even clear error will not suffice.") Thus, a litigant must "show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington, 562 U.S at 103, 131 S.Ct. at 770. When a petitioner challenges the factual determination made by the State Court, "federal habeas relief is available only if the state court's decision to deny post-conviction relief was 'based on an unreasonable determination of the fact.'" 28 U.S.C. § 2254(d)(2). In reviewing a State Court's ruling on post-conviction relief, "we are mindful that 'a determination on a factual issue made by the State court shall be presumed correct,' and the burden is on the petitioner to rebut this presumption 'by clear and convincing evidence.'" Tucker v. Ozmint, 350 F.3d 433, 439 (4th Cir. 2003); also see 28 U.S.C. § 2254(e).[2]

---

[2] Title 28, U.S.C. Section 2254(e) provides:

**Motion to Dismiss:**

In Section 2254 proceedings, the familiar standards of Rule 12(b)(6) of the Federal Rules of Civil Procedure apply to motions to dismiss. See Walker v. True, 399 F.3d 315, 319, n. 1. (4th Cir. 2005); also see Rules Governing Section 2254 Cases in the United States District Courts, Rule 12 (The Federal Rules of Civil Procedure, to the extent that they are not inconsistent with the *habeas* rules, may be applied to Section 2254 proceedings). A motion to dismiss a Section 2254 petition under Rule 12(b)(6) "tests the legal sufficiency of the petition, requiring the federal habeas court to 'assume all facts pleaded by the § 2254 petitioner to be true." Walker v. Kelly, , 139 (4th Cir. 2009)(citing Wolfe v. Johnson, 565 F.3d 140, 169 (4th Cir. 2009). The court, however, is "not obliged to accept allegations that 'represent unwarranted inferences, unreasonable conclusions, or arguments,' or that 'contradict matters properly subject to judicial notice or by exhibit.'" Massey v. Ojaniit, 759 F.3d 343, 353 (4th Cir. 2014)(quoting Blankenship v. Manchin, 471 F.3d 523, 529 (4th Cir. 2006). When assessing whether the Section 2254 petition states a claim for relief, the court must consider "the face of the petition any attached exhibits." Wolfe, 565 F.3d at 169 (internal quotations omitted). The court may also consider such exhibits

---

(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

(2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that –

    (A) the claim relies on –

        (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

        (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

    (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

and matters of public record, such as documents from prior state court proceedings, in conjunction with a Rule 12(b)(6) motion without having to convert the motion to one for summary judgment. Walker, 589 F.3d at 139. Finally, the undersigned notes that the same standard of review applies to motions to dismiss under Rule 12(b)(6) and motions for judgment on the pleadings under Rule 12(c), and both motions may be filed in Section 2254 actions. Walker v. Kelley, 589 F.3d 127, 138-39 (4th Cir. 2009).

### **Motion for Summary Judgment:**

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Once the moving party demonstrates the lack of evidence to support the non-moving party's claims, the non-moving party must go beyond the pleadings and make a sufficient showing of facts presenting a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 - 87, 106 S.Ct.1348, 89 L.Ed.2d 538 (1986). All inferences must be drawn from the underlying facts in the light most favorable to the non-moving party. Matsushita, 475 U.S. at 587, 106 S.Ct. at 1356. Summary judgment is required when a party fails to make a showing sufficient to establish an essential element of a claim, even if there are genuine factual issues proving other elements of the claim. Celotex, 477 U.S. at 322-23, 106 S.Ct. at 2552-53. Generally speaking, therefore, summary judgment will be granted unless a reasonable jury could return a verdict for the non-moving party on the evidence presented. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If no facts or inferences which can be drawn from the circumstances will support non-moving party's claims, summary

judgment is appropriate.

## ANALYSIS

1. <u>**Grounds One(A), (C), (D), and (F), Four, Six, Seven, and Eight are Procedurally Barred**</u>:

In Respondent's Motion, Respondent argues that Subparts A, C, D, and F of Ground One, Ground Two, Ground Four, Ground Five, Ground Six, Ground Seven, and Ground Eight are procedurally barred. (Document No. 14 and Document No. 15, pp. 10 – 17.) Respondent explains that the foregoing grounds are procedurally barred because Petitioner has not presented the substance of the federal constitutional claims to the SCAWV either on direct or habeas appeal.[3] (<u>Id.</u>) Respondent argues that the procedural bar to Petitioner's foregoing ground is based on an adequate and independent state law ground. (<u>Id.</u>, pp. 13 – 14.) Specifically, Respondent states that "[t]he *Losh* waiver is a firmly established principle of West Virginia jurisprudence and regularly followed by courts in West Virginia." (<u>Id.</u>, p. 14.) Respondent further notes that "[t]he Circuit Court acknowledge Petitioner had executed a *Losh* list and explicitly advised Petitioner of the rights he had given up or waived." (<u>Id.</u>) Thus, Respondent concludes that the *Losh* list constitutes adequate state law grounds. (<u>Id.</u>) To the extent Petitioner would seek to raise the foregoing grounds to the SCAWV now, Respondent argues that such would be precluded by the above adequate and independent state law grounds. (<u>Id.</u>) Respondent notes that Petitioner acknowledged during his omnibus hearing that he initialized those paragraphs not being asserted in his *habeas* proceeding and that "they are waived for the purpose of this hearing and waived permanently." (<u>Id.</u>, p. 15.) Petitioner further acknowledged that the waiver was "freely and

---

[3] Respondent acknowledges that Petitioner exhausted Subparts B and E of Ground One, and Ground Three. (Document No. 15, p. 11.)

voluntarily." (<u>Id.</u>) Although Petitioner asserted Subparts A, C, D, and F of Ground One, Ground Four, Ground Five, Ground Seven, and Ground Eight in his State *habeas* proceeding before the Circuit Court, Petitioner failed to assert the foregoing grounds on his *habeas* appeal. (<u>Id.</u>) Respondent asserts that Petitioner neither asserted Grounds Two or Six in his State *habeas* proceeding before the Circuit Court or in his *habeas* appeal. (<u>Id.</u>) Finally, Respondent states that none of the foregoing grounds were presented to the SCAWV on direct appeal. (<u>Id.</u>) Although Respondent acknowledges that Petitioner asserted a claim of prosecutorial misconduct on direct appeal, Respondent states that "the claim was factually limited to statements in which the prosecutor 'implied defense counsel were only there to enrich themselves and thus defense counsel's arguments should be given less weight." (<u>Id.</u>) Respondent argues "[t]his is not the same claim of prosecutorial misconduct Petitioner raises in the instant § 2254 petition." (<u>Id.</u>) Respondent further acknowledges that Petitioner asserted a footnote in his *habeas* appeal petition stated "for the purpose of federal habeas preservation, [he asserts] the following claims: (1) prejudicial joinder, (2) excessive sentence, and (3) grand jury composition and procedure." (<u>Id.</u>) Respondent, however, argues that Petitioner did not fairly present these claims to the SCAWV and "these claims were not exhausted and are now procedurally barred." (<u>Id.</u>) Respondent explains that these claims were not fairly presented because "Petitioner failed to cite any 'operative facts' or 'controlling legal principles.'" (<u>Id.</u>, p. 16.) Finally, Respondent argues that Petitioner has not demonstrated any cause or prejudice or a miscarriage of justice that would excuse the procedural default. (<u>Id.</u>, p. 20.) Accordingly, Respondent contends that Subparts A, C, D, and F of Ground One and Grounds Two, Four, Five, Six, Seven, and Eight should be dismissed as procedurally defaulted. (<u>Id.</u>)

In response, Petitioner filed Motions for Stay and Abeyance and a Response. (Document

Nos. 18, 22, and 23.) Petitioner does not dispute that Subparts A, C, D, and F of Ground One and Grounds Two, Four, Five, Six, Seven, and Eight were not presented to the SCAWV. (Document No. 18, p. 4, Document No. 22, p. 6, Document No. 23, p. 2.) Petitioner, however, argues that he specifically directed *habeas* appellate counsel to assert these grounds in his *habeas* appeal. (Document No. 18, pp. 2 – 3 and Document NO. 23, pp. 3 - 5.) Petitioner alleges that "[a]t no fault of the Petitioner's, and at his complete disgust, appellate counsel filed what he wanted to file without Petitioner's knowledge or approval in the appeal process." (Document No. 18, p. 2.) Petitioner claims that "[c]ounsel never sent Petitioner a copy of the 'Petitioner's Brief' or 'Petitioner's Reply' to witness if those grounds were, in fact, raised." (Id.) Petitioner contends that "[i]t wasn't until after the 'affirmation' of the lower Court's denial decision, is when Petitioner received a copy of the 'Petitioner's Brief,' 'Respondent's Brief,' 'Petitioner's Reply,' and the lower Court's 'Memorandum Decision.'" (Id., p. 3.) Petitioner argues he suffered ineffective assistance of *habeas* appellate counsel because counsel "failed to raise and/or adequately brief Petitioner's grounds." (Id., pp. 4 – 5.) Petitioner contends that his procedural default is excusable because he has shown cause for the default and prejudice. (Id., p. 5 and Document No. 22, pp. 6 - 7.) Petitioner asserts that "had it not been for his *habeas* appellate counsel going against his wishes, the grounds and sub-parts in question would have been presented to the state court." (Document No. 22, p. 7.); (Also see Document No. 23, pp. 3 – 5.) Petitioner further contends that "without all the grounds that were procedurally defaulted, he will not be able to fully paint the picture of his claims and show the extensive errors that were committed." (Id.) Finally, Petitioner requests a "stay and abeyance to allow Petitioner to return to the West Virginia Supreme Court of Appeal to adjudicate the following unexhausted grounds that habeas appellate counsel failed and/or refused to submit." (Document No. 18, p. 5.)

As stated above, AEDPA provides that state prisoners must exhaust available state remedies prior to filing a § 2254 petition in federal court. 28 U.S.C. § 2254(b)(1)(A); see also, McDaniel, 631 F.Supp. at 1545. Section 2254(b)(1)'s exhaustion requirement can be satisfied in either one of two ways: (1) the Petitioner can fairly present all claims in state court, or (2) the Petitioner's claims will be deemed exhausted if no state remedies are currently available. See Gray v. Netherland, 518 U.S. 152, 161, 116 S.Ct. 2074, 2080, 135 L.Ed.2d 457 (1996). Fair presentation requires the Petitioner to (1) present the same claims (2) to all appropriate state courts. See Matthews v. Evatt, 105 F.3d 907, 911 (4th Cir. 1997), *abrogated on other grounds*, United States v. Barnette, 644 F.3d 192 (4th Cir. 2011). Presentation of the same claim "contemplates that 'both the operative facts and the 'controlling legal principles' 'must be presented to the state court." Id. (quoting Verdin v. O'Leary, 972 F.2d 1467, 1474 (7th Cir. 1992) (quoting Picard v. Connor, 404 U.S. 270, 277, 92 S.Ct. 509, 513, 30 L.Ed.2d 438 (1971)). Although it is unnecessary to cite "book and verse on the federal constitution," "[i]t is not enough that all the facts necessary to support the federal claim were before the state courts, or that a somewhat similar state-law claim was made." See Picard, 404 U.S. at 278, 92 S.Ct. at 514; Anderson v. Harless, 459 U.S. 4, 6, 103 S.Ct. 276, 74 L.Ed.2d 3 (1982)(internal citations omitted); Baker v. Corcoran, 220 F.3d 276, 289 (4th Cir. 2000). The ground relied upon must be presented face-up and squarely; the federal question must be plainly defined." Matthews, supra, 105 at 911. "If state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution. If a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court." Duncan v.

Henry, 513 U.S. 364, 365-66, 115 S.Ct. 887, 886, 130 L.Ed.2d 865 (1995); see also Baldwin v. Reese, 541 U.S. 27, 32, 124 S.Ct. 1347, 1351, 158 L.Ed.2d 64 (2004)(stating that "[a] litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal'"). Petitioner must also provide the state court with the facts supporting the claimed constitutional violation and "explain how those alleged events establish a violation of his constitutional rights." Mallory v. Smith, 27 F.3d 991, 994 (4th Cir. 1994). The requirement of presentation of the same claim to all appropriate state courts is designed to give "the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S.Ct. 1728, 1732, 144 L.Ed.2d 1 (1999). This requirement is satisfied by presentation to the state's highest court on either direct or collateral review. Id. at 844, 119 S.Ct. at 1732. In West Virginia, prisoners may exhaust their available State court remedies by the following: (1) stating cognizable federal constitutional claims in a direct appeal to the SCAWV; (2) stating cognizable federal constitutional claims in a petition for a writ of *habeas corpus* in a State circuit court pursuant to West Virginia Code § 53-4A-1, followed by filing a petition for appeal from an adverse ruling to the SCAWV; or (3) filing a petition for writ of *habeas* corpus under the SCAWV's original jurisdiction and receiving a dismissal with prejudice.[4] Moore v. Kirby, 879 F.Supp. 592, 593 (S.D.W.Va. 1995); McDaniel v. Holland, 631 F.Supp. 1544, 1545-46 (S.D.W.Va. 1986).

---

[4] An original jurisdiction petition that is denied without an indication that the denial is with prejudice following a determination on the merits will not exhaust the petitioner's state court remedies. *See Moore*, 879 F.Supp. at 593; *McDaniel*, 631 F.Supp. at 1546; *see also, Meadows v. Legursky*, 904 F.2d 903, 908-09 (4th Cir. 1990)(*abrogated on other grounds, Trest v. Cain*, 522 U.S. 87, 118 S.Ct. 478, 139 L.Ed.2d 444 (1997)).

Generally, a federal district court may not review a Section 2254 petition unless there has been "total exhaustion" of the presented issues. Rose v. Lundy, 455 U.S. 509, 522, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982); also see Preiser v. Rodriguez, 411 U.S. 475, 477, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973)(When a petitioner fails to exhaust his state court remedies, a federal habeas petition should be dismissed.) When a petitioner presents a mixed petition under § 2254, that is a petition containing claims that are both exhausted and unexhausted, the District Court may (1) dismiss the petition in its entirety; (2) order a stay and abeyance while the petitioner exhausts his claims in State Court; or (3) allow the petitioner to remove the unexhausted claim claims and proceed with the exhausted claims. Rhines v. Weber, 544 U.S. 269, 275-77, 125 S.Ct. 1528, 161 L.E.2d 440 (2005). "[N]otwithstanding the failure of an applicant to exhaust the remedies available in the courts of the state," a district court may deny the unexhausted claims on the merits. 28 U.S.C. § 2254(b)(2); also see White v. Keller, 2013 WL 791008, * 5 (M.D.N.C. March 4, 2013). To be excused from the exhaustion requirement, Petitioner must establish that "there is an absence of available State corrective process" or "circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b)(1)(B). The foregoing statutory exceptions apply "only if there is no opportunity to obtain redress in state court or if the corrective process is so clearly deficient as to render futile any effort to obtain relief." Duckworth v. Serrano, 454 U.S. 1, 3, 102 S.Ct. 18, 70 L.Ed.2d 1 (1981). "State remedies may be rendered ineffective by inordinate delay or inaction in state proceedings." Ward v. Freeman, 46 F.3d 1129 (4th Cir. 1995)(unpublished table decision); Farmer v. Circuit Court of Md. for Balt. City., 31 F.3d 219, 223 (4th Cir. 1994)("There is . . . authority for treating sufficiently diligent, though unavailing, efforts to exhaust as, effectively, exhaustion, and for excusing efforts sufficiently shown to be futile in the face of state dilatoriness or recalcitrance.").

It is undisputed that Subparts A, C, D, and F of Ground One and Grounds Two, Four, Five, Six, Seven, and Eight were never presented to the SCAWV. Specifically, the record clearly reveals the following grounds were never presented to the SCAWV: (1) Trial counsel failed to undertake an independent investigation and property prepare himself prior to trial (Ground 1(A)); (2) Trial counsel failed to request adequate jury instruction (Ground 1(C)); (3) Trial counsel failed to identify and object to faulty robbery instruction (Ground 1(D)); (4) Appellate counsel failed to raise multiple meritorious grounds (Ground 1(F)); (5) Prosecutorial Misconduct (Ground 2); (6) Disproportionate sentence (Ground 4); (7) Failure to instruct (Ground 5); (8) Prejudicial joinder (Ground 6); (9) Defective robbery instruction (Ground 7); and (10) Cumulative error (Ground 8). Thus, the undersigned finds that Subparts A, C, D, and F of Ground One and Grounds Two, Four, Five, Six, Seven, and Eight of Petitioner's Petition are unexhausted and there is no allegation or indication that Petitioner should be excused from the exhaustion requirement. Nevertheless, a claim that has not been presented to the state's highest court "may be treated as exhausted if it is clear that the claim would be procedurally barred under state law if the petitioner attempted to present it to the state court." Baker v. Corcoran, 220 F.3d 276, 288 (4th Cir. 2000)(citing Gray v. Netherland, 518 U.S. 152, 161, 116 S.Ct. 2074, 2081, 135 l.Ed.2d 457 (1996); also see Coleman v. Thompson, 501 U.S. 722, 732, 111 S.Ct. 2546, 2555, 115 L.Ed.2d 640 (1991)("A habeas petitioner who has defaulted his federal claims in state court meets the technical requirements for exhaustion; there are no state remedies any longer 'available' to him.") Although such claims are technically exhausted, the procedural default doctrine applies to those claims in a subsequent Section 2254 proceeding. See Clagett v. Angelone, 209 F.3d 370, 378 (4th Cir. 2000)("If claims were not exhausted in state court but would now be procedurally barred if brought in state court, then federal courts can treat the claims as if they were

procedurally defaulted in the state courts.")

The procedural default doctrine prevents a federal court from hearing a claim that has been, or would be, disposed of on "adequate and independent state-law grounds, unless the petitioner can show cause and prejudice for, or a fundamental miscarriage of justice resulting from, failure to comply with the applicable rule." See Bostick v. Stevenson, 589 F.3d 160, 164 (4th Cir. 2009); Weeks v. Angelone, 176 F.3d 249, 270 (4th Cir. 1999)("A state rule is adequate if it is 'firmly establish,' and regularly and consistently applied by state court, and is independent if it does not 'depend[] on a federal constitutional ruling.")(internal citations omitted). West Virginia Code § 53-4A-1(c) creates a rebuttable presumption that a state *habeas* petitioner knowingly and intelligently waives any claim that could have been, but was not, presented during the state *habeas* proceedings. Thus, the foregoing procedural bar "provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal *habeas corpus* review of the default claim, unless the petitioner can demonstrate cause and prejudice of the default.'" See Hayes v. Plumley, 2016 WL 5662037, * 4 (S.D.W.Va. Sep. 30, 2016)(citing Coleman, 501 U.S. at 732, 111 S.Ct. at 2555); also see Green v. Ballard, 2015 WL 1612198, * 5 (S.D.W.Va. April 10, 2015)(recognizing that W.Va. Code § 53-4A-1(c) is "an adequate and independent state ground" for purposes of procedural default). Additionally, the West Virginia Rules of Appellate Procedure requires the appellate brief to "contain an argument clearly exhibiting the points of fact and law presented, the standard of review applicable, and citing the authorities relied on, under hearings that correspond with the assignments of error." Rule 10, West Virginia Rules of Appellate Procedure. It is well established that the Supreme Court of West Virginia deems issues not raised on appeal or only "mentioned in passing" as waived. Tiernan v. Charleston Area Med. Center, Inc., 203 W. Va. 135, 140 n. 10, 506 S.Ed.2d

578, 583 n. 10 (1993)("Issues not raised on appeal or merely mentioned in passing are deemed waived.). A state procedural rule that deems arguments not briefed to be waived is an adequate and independent state bar. <u>Weeks v. Angelone</u>, 176 F.3d 249, 270 (4th Cir. 1999)(explaining that the Virginia Supreme Court "regularly and consistently refused to consider claims not briefed or argued" on appeal). Thus, the undersigned finds there is not reasonable possibility that the State court may apply an exception to its procedural default rule. Although Petitioner has requested a stay and abeyance of the above action to allow him to return to the SCAWV to fairly present his unexhausted claims, Petitioner wholly fails to explain a viable procedural method for doing so.[5] Without a viable procedural method of returning to SCAWV to fairly present and exhaust the unexhausted claims, a stay and abeyance would be futile. Accordingly, the undersigned respectfully recommends that Petitioner's Motions for a Stay and Abeyance (Document Nos. 18 and 23) be denied.

Although a petitioner has procedurally defaulted a claim, such can be excused under certain circumstances. The Fourth Circuit has recognized that "procedural default is excusable under the cause and prejudice standard when the petitioner demonstrates (1) that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural

---

[5] Rule 25(b) of the West Virginia Rules of Appellate Procedure provides that "a petition for rehearing is granted only in exceptional cases" and the petition "shall state with particularity the points of law or fact which in the opinion of the party seeking rehearing the Intermediate Court or the Supreme Court has overlooked or misapprehended." Rule 25, West Virginia Rules of Appellate Procedure. A petition for rehearing must be filed within 30 days of release of any memorandum decision or opinion of the SCAWV. *Id.* In the instant case, Petitioner contends that habeas appellate counsel overlooked or failed to assert Subparts A, C, D, and F of Ground One and Grounds Two, Four, Five, Six, Seven, and Eight. The "well settled principles of appellate procedure indicate that 'a rehearing cannot assign as error points or arguments that could have been raised before the appeal resolved." *Perrine v. E.I. du Pont de Nemours and Co.*, 225 W.Va. 482, 598, 694 S.E.2d 815, 931 (2010)(citation omitted). "It has been correctly noted that '[t]he purpose of a petition for rehearing is not to present points which lawyers for the losing parties have overlooked or misapprehended.'" *West Virginia Regional Jail and Correctional Facility Authority v. A.B.*, 234 W.Va. 492, 519, 766 S.E.2d 751, 778 (2014)(citation omitted). To the extent Petitioner may be wishing to pursue his unexhausted claims via a petition for rehearing, such would be improper as there is no allegation or indication that the SCAWV "overlooked or misapprehended" the unexhausted issues (Subparts A, C, D, and F of Ground One and Grounds Two, Four, Five, Six, Seven, and Eight).

rule, and (2) that errors at his trial . . . worked to his *actual* and substantial disadvantage, infecting his entire trial with errors of constitutional dimensions." Wolfe v. Johnson, 565 F.3d 140, 158, n. 27 (4th Cir. 2009)(internal citations omitted). Generally, ineffective assistance of *habeas* counsel is not considered an external factor that would excuse the failure to exhaust a claim for *habeas corpus* relief. See Maples v. Thomas, 565 U.S. 266, 280, 132 S.Ct. 912, 922, 181 L.Ed.2d 807 (2012)(citation omitted)("Negligence on the part of a prisoner's postconviction attorney does not qualify as cause.'"). In Martinez v. Ryan, however, the Supreme Court recognized a limited exception. Martinez v. Ryan, 556 U.S. 1, 17, 132 S.Ct. 1309, 1320, 182 L.Ed.2d 272 (2012). The Supreme Court held "[w]here, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective." Id. This limited exception does not extend to ineffective assistance of appellate counsel. Id., 556 U.S. at 16, 132 S.Ct. at 1320(stating that the exception "does not concern errors in . . . appeals from initial-review collateral proceedings); also see Davila v. Davis, 582 U.S. 521, 528, 137 S.Ct. 2064, 2065, 198 L.Ed.2d 603 (2017)(decline to expand the *Martinez* exception to the distinct context of ineffective assistance of appellate counsel). Finally, the Fourth Circuit has stated that "[i]f any reasonable possibility exists that the state court may apply an exception to its procedural default rule, the federal court should not apply a state procedural bar to find that exhaustion is futile." Meadows v. Legursky, 904 F.2d 903, 909 (4th Cir. 1990), abrogated on other grounds by, Trest v. Cain, 522 U.S. 87, 118 S.Ct. 478, 139 L.Ed.2d 444 (1997).

27

In the instant case, Petitioner concedes that Subparts A, C, D, and F of Ground One and Grounds Two, Four, Five, Six, Seven, and Eight were not fairly presented to the SCAWV and are procedurally defaulted. (Document No. 22, p. 6.) Petitioner, however, argues that his procedural default is excusable based upon ineffective assistance of *habeas* appellate counsel. (Document No. 18, pp. 3 – 5 and Document No. 22, p. 7.) Specifically, Petitioner asserts that his *habeas* appellate counsel acted ineffectively in failing to raise the above grounds in his appeal of the Circuit Court's decision denying his *habeas* petition. Ineffective assistance of *habeas* appellate counsel, however, cannot serve as the cause for the default of these claims. The Martinez Court held that this exception applies only to the initial-review collateral proceeding for raising claims of trial counsel error. See Atkins v. Holloway, 792 F.3d 654, 661 (6th Cir. 2015); Johnson v. Warden of Broad River Corr. Inst., 2013 WL 856731, at *1 (4th Cir. Mar. 8, 2013)(citing Martinez, 566 U.S. at 16, 132 S.Ct. at 1320); also see Norris v. Brooks, 794 F.3d 401, 405 (3rd Cir. 2015)(explaining that *Martinez* "applies only to attorney error causing procedural default during initial-review collateral proceedings, not collateral appeals"). Specifically, the Supreme Court explicitly stated that the Martinez exception "does not concern attorney errors in other kinds of proceedings including appeals from initial-review collateral proceedings." Martinez, 566 U.S. at 16, 132 S.Ct. at 1320; also see Boothe v. Ballard, 2016 WL 1275054, * 50 - 52 (S.D.W.Va. March 31, 2016)(finding that the *Martinez* exception did not apply to show cause for petitioner's failure to raise procedurally barred unexhausted claims in his *habeas* appeal where petitioner alleged ineffective assistance of *habeas* counsel). Similar to the circumstances in the instant case, the Fourth Circuit explained in *Johnson* as follows:

> Thus, even assuming that Johnson could raise his instant ineffective assistance claim for the first time only in his state postconviction proceeding, he was represented by counsel at his postconviction hearing, and his claim was properly exhausted at that hearing. Instead, Johnson is asserting that his attorney

improperly failed to preserve his ineffective assistance claim on appeal from the denial of his postconviction petition. However, Martinez assures that Johnson got his day in court at his original postconviction hearing; "deprivation of a second day [i.e. an appeal] does not constitute cause." *Arnold v. Dormire*, 675 F.3d 1082, 1087 (8th Cir. 2012).

Accordingly, because Johnson alleges only ineffective assistance of appellate postconviction counsel, his allegations do not constitute cause for his failure to exhaust under the limited exception in *Martinez*. Instead, his claims falls under the general *Coleman* rule that ineffective assistance of postconviction counsel cannot constitute cause for procedural default.

Johnson, 2013 WL 856731, at *1.

Based upon the foregoing, the undersigned finds that Petitioner has failed to show cause and prejudice or a fundamental miscarriage of justice that would excuse his procedural default. Since the ineffective assistance of *habeas* appellate counsel cannot serve as cause for the procedural default of claims, Subparts A, C, D, and F of Ground One and Grounds Two, Four, Five, Six, Seven, and Eight are barred. See Atkins, 792 F.3d at 661; Johnson, 2013 WL 856731, at *1; Arnold, 675 F.3d at 1087; Boothe, 2016 WL 1275054, at 50 – 52. Petitioner does not assert or establish actual innocence. Accordingly, the undersigned respectfully recommends that the District Court find that Subparts A, C, D, and F of Ground One and Grounds Two, Four, Five, Six, Seven, and Eight are procedurally defaulted and must be dismissed.

**2.    Ineffective Assistance of Counsel:**

The standards established by the United States Supreme Court in determining whether a defendant was denied his Sixth Amendment right to effective assistance of counsel are set forth in Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Ineffective assistance of counsel claims consist of mixed questions of fact and law. Id. Under the two-pronged standard, a Petitioner must show (1) that counsel's performance was so deficient that it fell below an objective standard of reasonableness, and (2) that counsel's deficiency

resulted in prejudice so as to render the results of the trial unreliable. Id. at 687-91, 104 S.Ct. at 2064-66. Counsel's performance is entitled to a presumption of reasonableness and judicial review of counsel's strategic decisions is highly deferential. Id. at 689, 104 S.Ct. at 2065. Thus, a petitioner challenging his conviction on the grounds of ineffective assistance must overcome a strong presumption that the challenged actions constituted sound trial strategies. Id. The Court in Strickland cautioned against the ease in second-guessing counsel's unsuccessful assistance after the adverse conviction and sentence are entered. Id. The Fourth Circuit Court of Appeals specifically recognized that ineffective assistance of counsel may not be established by a "Monday morning quarterbacking" review of counsel's choice of trial strategy. Stamper v. Muncie, 944 F.2d 170, 178 (4th Cir. 1991), cert. denied, 506 U.S. 1087 (1993).

Where the State court applies the Strickland standard in the adjudication of a petitioner's ineffective assistance of counsel claim, the standard of review in a Section 2254 proceeding differs from the standard used in the direct review of a Strickland challenge. The United States Supreme Court has explained as following:

> The pivotal question is whether the state court's application of the Strickland standard was unreasonable. This differs from asking whether defense counsel's performance fell below Strickland's standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a Strickland claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), "an unreasonable application of federal law is different from an incorrect application of federal law. Williams, supra, at 410, 120 S.Ct. 1495. A state court must be granted a deference and latitude that are not in operation when the case involves review under the Strickland standard itself.

Harrington, supra, 562 U.S. at 101, 131 S.Ct. at 785. The Supreme Court acknowledged that "[s]urmounting Strickland's high bar is never an easy task," and "[e]stablishing that a state

court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." Id., 562 U.S. at 105, 131 S.Ct. 788("The standards created by *Strickland* and § 2254(d) are both 'highly deferential," and when the two apply in tandem, review is 'doubly' so."); also see Woods, supra, 575 U.S. at 315, 135 S.Ct. at 1376(For claims of ineffective assistance of counsel, "AEDPA review must be doubly deferential in order to afford both the state court and the defense attorney the benefit of the doubt.")(internal quotations omitted). The Supreme Court warned that "[f]ederal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d)." Harrington, supra, 562 U.S. at 105, 131 S.Ct. 788. Under Section 2254(d), "a habeas court must determine what arguments or theories supported, or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurist could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the United States Supreme Court]." Id., 562 U.S. at 101, 131 S.Ct. at 785. To obtain *habeas* relief from a federal court, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id., 562 U.S. at 103, 131 S.Ct. at 787. Applying these standards, and based upon all the evidence of record, the Court will address the merits of each of Petitioner's exhausted claims of ineffective assistance of counsel.

### A.    Trial counsel's failure to object to prejudicial evidence that was admitted by the State.

In Ground 1(B), Petitioner argues that trial counsel was ineffective for failing "to object to prejudicial evidence introduced to the jury and admitted into evidence." (Document No. 2, p. 5.) Petitioner contends that the prosecutor admitted a "white powdery substance" into evidence

through the testimony of Officer Colon. (Id.) Petitioner complains this "white powdery substance" was allegedly cocaine even though it "was never tested and evidence showed that it did not belong to Petitioner." (Id.) Petitioner states that the white powdery substance "could have been simply face powder, cooking flour, or baking soda." (Id.) Petitioner asserts that "[t]rial counsel failed to object to the introduction as well as the admission of the evidence on the grounds that there was no foundation laid and that this substance had nothing, whatsoever, to do with the Petitioner or the crime committed." (Id.) Petitioner further asserts that trial counsel should have at least requested a limiting instruction. (Id.) Petitioner concludes that trial counsel's above conduct "falls well below the standard of reasonableness and was prejudicial to the Petitioner." (Id.) Petitioner argues that the "prejudicial effect of this evidence cannot be overstated as the State's case against Petitioner was based on the premise that Petitioner allegedly sold drugs to a confidential informant (the victim) even though no drugs or money were ever recovered." (Id.)

In his Motion for Summary Judgment, Respondent argues that trial counsel was not ineffective in failing to object to the white powdery substance found in Petitioner's co-defendant's apartment. (Document No. 14 and Document No. 15, pp. 21 – 22.) Respondent acknowledges that the State sought the introduction of the white powdery substance through the testimony of Paul E. Colon, the evidence custodian for the Oak Hill Police Department. (Id., p. 21.) Respondent explains that even though Petitioner's trial counsel did not object to introduction of the white powdery substance, Petitioner's co-defendant's trial counsel objected to such. (Id.) Specifically, co-defendant's trial counsel argued that "[w]e don't know that" the evidence is cocaine because it was neither field tested by Sergeant Young nor sent to the West Virginia State Police Lab for testing. (Id.) Respondent notes that in considering the objection, the trial court

acknowledged that the CI specifically testified that she purchased half of a gram of cocaine for $50.00 from Petitioner, placed it down her bra, and started to walk away when Petitioner stopped her, grabbed her purse, and removed the cocaine from her bra. (Id.) Respondent explains that based upon this testimony, the trial court allowed the introduction of the bag containing a white powdery substance but limited Mr. Colon's testimony to stating that he received the evidence on a date certain from Sgt. Young. (Id.) Respondent states that "[d]uring Sgt. Young's testimony it was revealed that the substance was obtained during the search of [the co-defendant's] apartment and that based on his experience, the substance was cocaine." (Id.) Respondent contends that the SCWVA appropriately found that "Petitioner failed to explain how the ruling would have been different had he been the one to object." (Id., pp. 21 – 22.) Additionally, Respondent asserts that Petitioner fails to explain precisely what instruction counsel should have requested that was not already given by the trial court. (Id., p. 21.) Therefore, Respondent argues that Petitioner can neither establish trial counsel's performance fell below an objective standard of reasonableness nor that the results of his trial would have been different had counsel objected. (Id., p. 22.)

In Response, Petitioner argues that the evidence that the white powdery substance was found in the apartment of his co-defendant made it easy for "a jury to confuse the issue." (Document No. 22, p. 10.) Petitioner contends that it allowed the jury to "believe that Petitioner and co-defendant were working in tandem, then the jury would use evidence against Mr. Lee against Mr. Goard." (Id.) Petitioner again complains that his "trial counsel stood silent and co-defendant's counsel objected to the introduction of the white powdery substance." (Id., p. 11.) Petitioner complains that co-defendant's trial counsel's objections were ultimately overruled. (Id.) Petitioner further states that "[n]either trial counsel requested a cautionary instruction nor did the trial court give those 'adequate instructions.'" (Id.) Petitioner argues that he was

prejudiced by the introduction of this evidence. (Id., pp. 12 – 14.) Petitioner asserts that "trial counsel allowed the prosecutor to use the white powdery substance against Petitioner by failing to object to prosecutor's implication that the white powdery substance that was admitted into evidence was the same cocaine that was purchased during the controlled buy that the victim set up with Petitioner." (Id.) Petitioner, however, argues there was "no evidence or inference showing that Petitioner received the white powdery substance from co-defendant prior to the buy." (Id., p. 13.) As to the instruction, Petitioner states it is "quite clear by the records that trial counsel should have requested the trial judge give adequate instruction to the jury as to how they were to look at the white powdery substance as a result of both Petitioner and co-defendant." (Id.) Petitioner contends that by not objecting or requesting an appropriate instruction, trial counsel allowed confusion with the jury leading the jury to use "evidence that only pertains to co-defendant against the Petitioner." (Id.) Petitioner concludes "[h]ad trial counsel objected, the prejudicial evidence would not have been used to support the State's conspiracy theory and Petitioner would not have been convicted of such charge." (Id., p. 14.) Petitioner, therefore, states that "trial counsel's performance was outside the wide range of professionally competent assistance. (Id.)

After identifying the Strickland standard and the equivalent West Virginia authority as the applicable precedent, the Circuit Court addressed the above issue, in pertinent part, as follows:

> While trial counsel did not object to the admission of the "white powdery substance" that was recovered along with a handgun from the apartment where the Petitioner's co-defendant was at proceeding and following the robbery, Petitioner's co-defendant's counsel did object to questioning regarding the "white powdery substance" and its admission into evidence. Those objections were overruled by the trial court.
> Based upon this alone, the Court finds the Petitioner is unable to show that had trial counsel also objected to the admission of the evidence the Court's ruling

34

would have been different.

Further, following the Court overruling Petitioner's co-defendant's objection, both trial counsel and co-defendant's counsel collectively attacked the weight of the evidence. Counsel elicited testimony and argued in closing that the "white powdery substance" was unconfirmed as cocaine and was unrelated to the robbery. Counsel further sought to discredit the confidential informant's testimony and attack her credibility by attempting to show that the substance recovered was not the same that had been sold to the confidential informant but rather that the confidential informant was a drug user and had kept the cocaine and lied when she told law enforcement that it had also been taken. The jury chose not to accept counsels' arguments, however. Accordingly, under the prejudice prong of the *Strickland/Miller* test, the Court finds and concludes the Petitioner is simply unable to show that trial counsel's failure to object to the admission of the "white powdery substance" in any way affected the ultimate outcome of his criminal trial.

Moreover, while the Petitioner alleges that there was no foundation for the admission of the bag of "white powdery substance" and contest its admission into evidence, the Court disagrees.

\*\*\*

In the underlying trial, the subject "white powdery substance" and a gun was recovered from the apartment where the co-defendant Mr. Lee was found immediately following the robbery. Based upon the Petitioner and his co-defendant being charged with conspiracy to commit a robbery which occurred during the course of a controlled purchase of narcotics, the testimony of the confidential informant, and the video evidence, the Court finds the bag of "white powdery substance" meets the relevance test. Further, based upon the additional testimony of law enforcement regarding the context of the search and the recovery and chain of custody of the bag of "white powdery substance," the Court then, and now, finds the bag of "white powdery substance" was both relevant and admissible in the criminal trial of this matter. Hence it was wholly within the province of the jury to determine what weight was to be given to that evidence.

Moreover, the Court also finds that it was a tactical decision on the part of trial counsel not to object to the foundation or admission of this "white powdery substance" and the gun because both of these items of evidence were not directly connected to the Petitioner since they were recovered from the apartment of the co-defendant, Robert Lee. When reviewing the trial transcripts in their entirety, this tactical decision becomes even more apparent as trial counsel attempted to deflect culpability from his client, while at the same time attacking the State's key evidence, i.e. the surveillance video of the incident, by arguing that it was not conclusive as to the identity and involvement of Petitioner. Accordingly, the Court finds and concludes that Petitioner has also failed to establish that trial counsel's performance was deficient under the first prong of *Strickland/Miller* test.

(Document No. 11-14, pp. 47 - 51.) After identifying the <u>Strickland</u> standard and the

equivalent West Virginia authority as the applicable precedent, the SCAWV addressed the issue, in pertinent part, as follows:

\*\*\*

First, as the habeas court noted, Mr. Lee objected to the evidence, and that objection was overruled. Petitioner failed to explain how the ruling would have been different had he been the one to object. Moreover, petitioner's theory at trial was that it was not him who was depicted on the surveillance footage. Petitioner attempted to discredit the CI's credibility; he argued that the CI was a drug user, that she kept the cocaine, and that she lied to law enforcement about it having been stolen. Because the cocaine was found in Mr. Lee's apartment, and because Mr. Lee informed law enforcement that it belonged to him, petitioner was able to disclaim culpability by arguing that there was "[n]ot a single bit of actual physical evidence that ties [him] to this whole situation." Because the white powdery substance was not connected to petitioner, it was not outside the broad range of acceptable conduct not to object to its admission. And because this Court does not engage in hindsight or second guess strategic decisions, petitioner cannot demonstrate ineffective assistance on this ground when counsel highlighted the claimed lack of connection to further his theory at trial.

We also find that even if petitioner's trial counsel's performance fell below an objective standard of reasonableness in failing to object to the challenged remarks and evidence, there is no reasonable probability that the result of petitioner's trial would have been different had those objections been made. The CI testified to informing the police that she could purchase cocaine from petitioner in a controlled buy; that the police wanted her to proceed with the controlled buy from petitioner, providing her with money and outfitting her with a purse containing a camera; that she, in fact, purchased cocaine from petitioner; that, following the drug buy, petitioner attempted to take her purse; that petitioner picked her up and eventually "slammed" her down on the ground, still attempting to take her purse; that Mr. Lee appeared on the scene and petitioner informed him that the CI was "wearing a wire"; that Mr. Lee demanded that she give petitioner the purse or he would shoot her; and that she then "gave up fighting" with petitioner and he "jerked" the purse from her. Much of this altercation was recorded by the apartment complex's surveillance cameras, and the CI narrated that footage as it was played for the jury. Shante Maddox, Mr. Lee's sister-in-law, also observed the altercation. She identified petitioner as the man who "beat up" the CI, and she heard him inform Mr. Lee that the CI "has a wire on" and had something that belonged to him. Several law enforcement officers testified, including Chief Rod Perdue of the Fayette County Sheriff's Department, who oversaw the controlled buy and provided the CI with the money and camera-outfitted purse used in the buy, and Sergeant Richard Stephenson of the West Virginia State Police, who testified that he found the purse worn by the CI, but not the recording equipment, discarded in a nearby dumpster. Against this evidence, it cannot be said that counsel's claimed deficiencies in representation affected the outcome of petitioner's trial.

36

(Document No. 11-11, p. 6.)

First, Petitioner does not dispute that the Circuit Court and the SCAWV correctly referenced the <u>Strickland</u> standard as applicable law to Petitioner's ineffective assistance of counsel claim. Petitioner, however, appears to argue that the Circuit Court and the SCAWV unreasonably applied <u>Strickland</u> to the facts of his case. Considering what arguments or theories supported, or could have supported the Circuit Court's and the SCAWV's decisions, the undersigned finds that fairminded jurists could not find that those arguments or theories are inconsistent with existing law. As stated above, the Circuit Court and the SCAWV determined that trial counsel's failure to object to the admission of the "white powdery substance" was a tactical decision that did not fall below an objective standard of reasonableness. The Court will not second-guess an attorney's tactical decisions unless they appear unreasonable in view of all the circumstances. <u>Goodson v. United States</u>, 564 F.2d 1071, 1072 (4th Cir. 1977). The record clearly reveals Petitioner was proceeding under the defense theory that Petitioner was not the person depicted in the surveillance video selling cocaine to the CI/victim or the person that took the CI/victim's purse. (Document No. 11-13, p. 25.) Additionally, Petitioner's co-defendant admitted to law enforcement that the "white powdery substance" belonged to the co-defendant. At trial, Petitioner's trial counsel disclaimed Petitioner's culpability arguing there was zero physical evidence tying Petitioner to the situation because the cocaine was found in the co-defendant's apartment and the co-defendant claimed ownership. As state above, the SCAWV determined "[b]ecause the white powdery substance was not connected to Petitioner, it was not outside the broad range of acceptable conduct not to object to its admission." Based upon the

foregoing, there is no indication that trial counsel acted unreasonably by failing to object to the "white powdery substance."

As stated above, the Circuit Court and the SCAWV determined that Petitioner was not prejudiced by trial counsel's failure to object. First, Petitioner's co-defendant's counsel objected to the admission of the "white powdery substance." As explained by the SCAWV, co-defendant's counsel's objection was overruled and Petitioner failed to explain how the ruling would have been different had Petitioner's trial counsel been the one objecting. (Document No. 14-1 pp. 162-63, 173.) Although Petitioner concludes "[h]ad trial counsel objected the prejudicial evidence would not have been used to support the State's conspiracy theory and Petitioner would not have been convicted of such charge," such is not supported by the record. It is speculative and irrational to conclude that an objection by Petitioner's trial counsel would have carried any greater weight than an objection by Petitioner's co-defendant's trial counsel. Second, the Circuit Court and SCAWV determined that the "white powdery substance" was relevant and properly admitted into evidence during the underlying criminal proceedings. The record reveals the CI/victim testified to the following: (1) She informed police she could purchase cocaine from Petitioner; (2) The police provided the CI with money and video equipment in a purse for the control buy; (3) Petitioner purchased cocaine from Petitioner and placed such into her bra; (4) Following the buy, Petitioner became suspicious of a wire and attempted to take the CI/victim's purse; (5) Petitioner ultimately "slammed" the CI/victim to the ground, the co-defendant appeared, and Petitioner informed his co-defendant that the CI/victim was "wearing a wire; (6) Petitioner's co-defendant demanded that the CI/victim handle over the purse or he would shoot her; and (7) The CI/victim stopped resisting after Petitioner hit her in the back of the head and Petitioner "jerked" the purse from her and took the cocaine. (Document No. 14-1, pp. 103-15,

144-51, 195, 198.) The Circuit Court limited Sgt. Young's testimony to him stating that he received the "white powdery substance" on a date certain from Sgt. Young. (Id., p. 199.) Sgt. Young testified that he obtained the "white powdery substance" from the co-defendant's apartment, and the believe the substance was cocaine based on his experience. (Id., pp. 207-08.) Therefore, the Circuit Court and SCAWV determined that the "white powdery substance" was relevant and properly admitted into evidence. Petitioner cannot show that trial counsel acted ineffectively in failing to pursue the above meritless arguments. See United States v. Kilmer, 167 F.3d 889, 893 (5th Cir. 1999)(stating that "[a]n attorney's failure to raise a meritless argument . . . cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue"); Moore v. United States, 934 F.Supp. 724, 731 (E.D.Va. 1996)(holding that "there can be no claim of ineffective assistance where, as here, counsel is alleged to have failed to raise a meritless argument"). The undersigned, therefore, cannot find that the State Court's application of the Strickland standard was unreasonable concerning trial counsel's failure to object to the "white powdery substance." Accordingly, the undersigned respectfully recommends that the District Court deny and dismiss the above claim of ineffective assistance of counsel.

**B.     Trial counsel's failure to object to the prosecutor's improper and inflammatory remarks in closing argument.**

In Ground 1(E), Petitioner argues that trial counsel was ineffective for failing "to object to improper and inflammatory remarks made by the prosecutor during the closing and rebuttal arguments." (Document No. 2, p. 6.) Petitioner contends that the prosecutor made "improper and highly prejudicial remarks" because the remarks "(1) inflamed the passion of the jury, (2) bolstered and/or vouched for the credibility of the State's witnesses as well as asserted his

personal opinion to the incredibility of the defense witness, (3) misstated the evidence and/or purposely misled the jurors, (4) argued facts not in evidence, and (5) asserted his personal opinion of Petitioner's guilt." (Id.) Petitioner concludes that "trial counsel's failure to object to these improper and highly prejudicial remarks herein falls well outside the broad range of professional competent assistance." (Id.) Petitioner completely fails to specifically identify the "improper or highly prejudicial" statements made by the prosecutor. (Id.)

In his Motion for Summary Judgment, Respondent first argues he is entitled to judgment because Petitioner's claim is improperly pled. (Document No. 14 and Document No. 15, pp. 22 – 23.) Specifically, Respondent notes that Petitioner fails to identify the prosecutor's statements he is challenging. (Id., p. 23.) Respondent argues that Petitioner "faces a high legal burden in establishing both the factual and legal validity of his claims" and Petitioner's failure to articulate sufficiently his claim does not satisfy this burden. (Id.) Notwithstanding the foregoing, Respondent acknowledges that Petitioner raised this claim in his *habeas* appeal wherein he identified a total of two challenged remarks: (1) Petitioner asserted trial counsel was ineffective in failing to object to the prosecutor's reference to a third-party bystander at the crime scene as a "boss" (Id., p. 24); and (2) Petitioner asserted trial counsel was ineffective in failing object to the prosecutor's improper comment regarding the credibility of various witnesses and Petitioner's guilt (Id., p. 25).[6] Respondent, therefore, addressed Petitioner's above claim concerning the alleged improper comments set forth in his *habeas* appeal. (Id.)

---

[6] Respondent further notes that in his direct appeal, Petitioner argued that the trial court erred in overruling trial counsel's objection to statements made by the prosecutor in closing argument that implied defense counsel were only there to enrich themselves. (Document No. 15, p. 25.) This claim, however, differs from Petitioner's instant claim that *trial counsel* was ineffective for failing "to object to improper and inflammatory remarks made by the prosecutor during the closing and rebuttal argument." (Document No. 2, p. 6.) Clearly, the argument presented to the WVSCA on direct appeal was not an ineffective assistance of counsel claim. Furthermore, Petitioner appears to acknowledge in his direct appeal that trial counsel did object to the challenge comments, but the *trial court* erred in overruling those objections. (Document No. 11-6, pp. 9 – 12.)

In Response, Petitioner does not address Respondent's claim that the above claim is improperly pled. (Document No. 22, pp. 14 – 27.) Petitioner instead identifies and presents arguments concerning the specific comments Petitioner now alleges were improperly made by the prosecutor during closing and rebuttal arguments. (Id.) Specifically, Petitioner identifies that following statements as improper:

1.    Inflamed the passion of the jury:

    A.    . . I represent us. I work for you-all. This is our community. Every time you heard the word 'me,' every time you heard the word 'State' today, they're talking about us. This is our community (Id., p. 16);

    B.    Prosecutor additionally inserted how shocking it was to him that a woman was "being beat down in a parking lot and nobody seemed to care" then asked the jury "is that where we're at? Is that where Fayette County is? Is the price of life so cheap in this county that that doesn't even get anybody's attention? Nobody seems to care. That's what shocked me about it. If that's where we are, we're in bad shape?" (Id., p. 17);

    C.    The prosecutor's final statement before deliberation was "some people stop me in Wal-mart and say 'oh what are we going to do about crime, drugs, whatever' . . . the question is what are we going to do? Condone to his behavior . . . or do something? It's time to do something" (Id., pp. 17 - 18).

2.    Prosecutor bolstered and/or vouched for credibility of the State's key witness:

    A.    The prosecutor stated, "it's difficult to criticize a person buying drugs, working for the police, to call them a drug user . . . (Respondent's Ex 2 at 346)" (Id., p. 19);

    B.    The prosecutor, thereafter, said "This was not a situation where the [victim] was in some terrible trouble. She didn't have some felony charge or something that she was getting out of . . . she's working for money (Respondent's Ex 2 at 346)." (Id.);

C.    The prosecutor then aligns himself with the victim stating, "I love my job, but I can't afford to volunteer to do it. So I don't think working for money is an egregious, terrible thing (Respondent Ex. 2 at 347)." (<u>Id.</u>);

D.    The prosecutor argues to the jurors that the victim "gave a statement to the police within hours . . . and the video, which she didn't see for seven, eight, nine months later, directly corroborate her testimony." Declaring that to be "good evidence. That's really good evidence (Respondent Ex. 2, at 348)." (<u>Id.</u>, pp. 19 – 20);

E.    The prosecutor continued to bring up the fact that the victim "gave her statement in the moment" then bragged that the victim "only saw this video in preparation for trial." Prosecutor then argued to the jury that defense counsel "didn't knock her off her statement when they cross-examined her (Respondent's Ex. 2 at 348)." (<u>Id.</u>, p. 20); and

F.    Petitioner contends that the prosecutor even went as far as to utilize law-enforcement to put more credibility behind the victim's testimony by pointing out to the jurors Sgt. Chris Young's testimony stating that the statement that was given from the victim was consistent with his testimony (Respondent's Ex. 2 at 348) (<u>Id.</u>, pp. 20 – 21.).

3.    Prosecutor asserted his personal opinion of the credibility of the defense witness and on Petitioner's guilt:

A.    Prosecutor initiated the attack on the credibility of the defense witnesses arguing that "to believe what the two witnesses of [co-defendant] testified for becomes more and more incredible (Respondent's Ex. 2 at 343)" (<u>Id.</u>, p. 21);

B.    The State then inserted his personal opinion as to what made him "doubt the co-defendant's witness's credibility," how he "was really unsure" as to what the witness saw in the apartment versus what the witness saw out of the apartment stating that it was "very, very hard to believe" that the witness could see the altercation through the window; "very hard to believe," how "incredible" it was for the witness not being able to identify Petitioner in court

42

      when Petitioner was at nor near this doorstep, how it was unbelievable to him that there could have been cocaine and a firearm in the apartment and the witness not know about it" (Id.);

C.    Petitioner asserts that the prosecutor inserted his personal opinion about the Petitioner's guilt . . . by stating that the Petitioner and co-defendant were on trial because of "what they did" (Respondent's Ex. 2 at 374) (Id., p. 22); and

D.    The State argued to the jury that Petitioner was a guilty armed robber (Respondent's Ex. 2 at 374), then ask the jury who were they going to trust, the lawyers who are being paid to get Petitioner off or the victim (Respondent's Ex. 2 at 375) (Id., p. 23).

4.    Prosecutor misstated evidence and/or misled the jurors, and argued facts not in evidence.

A.    The statement made by the prosecutor during his closing argument inferred that the individual in the black car was the 'Boss," was highly prejudice (Id., p. 23);

B.    During the prosecutor's closing argument, he stated to the jury that the victim testified that she seen the surveillance video "two days" prior to trial. (Respondent's Ex. 2 at 347-48) . . . when she clearly didn't testify to that fact (Id., pp. 23 – 25).

    *Habeas* petitions must meet heightened pleading requirements. McFarland v. Scott, 512 U.S. 849, 114 S.Ct. 2568, 129 L.Ed.2d 66 (1994). The petition must "set forth in summary form the facts supporting each of the grounds thus specified." Rule 2(c) of the Rules Governing Section 2254 Proceedings in the United States District Courts. "[N]otice pleading is not sufficient [in federal *habeas corpus*], for the petition is expected to state facts that point to a 'real possibility' of constitutional error.' " Blackledge v. Allison, 431 U.S. 63, 75 n. 7, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977); also see Bernier v. Moore, 441 F.2d 395, 396 (1st Cir. 1971)(stating that

"[t]he fundamental purpose of *habeas corpus* would be undermined if the writ were prostituted by holding it out as available upon mere 'notice' without any showing of entitlement.") The petitioner must come forward with evidence that the claim has merit. Nickerson v. Lee, 971 F.2d 1125 (4th Cir. 1992), cert. denied, 507 U.S. 923, 113 S.Ct. 1289, 122 L.Ed.2d 681 (1993), *abrogation on other grounds recognized*, Yeatts v. Angelone, 166 F.3d 255 (4th Cir. 1999). Unsupported, conclusory allegations do not entitle a petitioner to relief. See Beasley, 649 F.Supp. at 566(finding that "[m]ere conclusory charges of perjury and the knowing use of perjured testimony is insufficient to warrant a hearing or habeas relief"); Jones, 66 F.3d at 204-05(stating that "[c]onclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief").

The undersigned finds that Petitioner's above claim as set forth in his Petition is improperly pled. In his Petition, Petitioner argues that trial counsel was ineffective for failing "to object to improper and inflammatory remarks made by the prosecutor during the closing and rebuttal argument." (Document No. 2, p. 6.) Petitioner contends that the prosecutor made "improper and highly prejudicial remarks" because the remarks "(1) inflamed the passion of the jury, (2) bolstered and/or vouched for the credibility of the State's witnesses as well as asserted his personal opinion to the incredibility of the defense witness, (3) misstated the evidence and/or purposely misled the jurors, (4) argued facts not in evidence, and (5) asserted his personal opinion of Petitioner's guilt." (Id.) Petitioner concludes that "trial counsel's failure to object to these improper and highly prejudicial remarks herein falls well outside the broad range of professional competent assistance." (Id.) Petitioner, however, completely failed to specifically identify any of the "improper or highly prejudicial" statements made by the prosecutor. (Id.) Although Petitioner fails to address Respondent's argument that the above ground is

44

insufficiently pled, Petitioner's Response sets forth numerous statements made by the prosecutor that were allegedly improper and arguments in support. (Document No. 22, pp. 14 – 27.) Petitioner's arguments, however, focus solely upon how the above comments allegedly resulted in prosecutorial misconduct. (Id., pp. 14 – 27.) Petitioner wholly fails to specifically address the ineffective assistance of counsel claim tied to this claim. (Id.) Petitioner merely concludes that [h]ad trial counsel objected to these improper statements, he would not have been convicted on the conspiracy charge." (Id., p. 27.) As stated above, "[t]he standards created by Strickland and § 2254(d) are both 'highly deferential,'" and when the two apply in tandem, review is 'doubly' so." Harrington, supra, 562 U.S. at 105, 131 S.Ct. at 788. The Supreme Court warned that "[f]ederal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d)." Harrington, supra, 562 U.S. at 105, 131 S.Ct. 788. Under Section 2254(d), "a habeas court must determine what arguments or theories supported, or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurist could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the United States Supreme Court]." Id., 562 U.S. at 101, 131 S.Ct. at 785. To obtain habeas relief from a federal court, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id., 562 U.S. at 103, 131 S.Ct. at 787. Petitioner has completely failed to present sufficient allegations to support such a finding. Therefore, the above claim of should be dismissed as insufficiently pled.

      Notwithstanding the foregoing, the undersigned will consider the merits of Petitioner's above claim concerning the challenged statements made by the prosecutor that were fairly

presented to the WVSCA in his *habeas* appeal.[7] As noted above, Petitioner only presented two challenges to the WVSCA that trial counsel allegedly acted ineffectively in failing to object: (1) Petitioner asserted trial counsel was ineffective in failing to object to the prosecutor's reference to a third-party bystander at the crime scene as a "boss" (Id., p. 24); and (2) Petitioner asserted trial counsel was ineffective in failing object to the prosecutor's improper comment regarding the credibility of various witnesses and Petitioner's guilt (Id.). First, Respondent considers Petitioner's claim that the prosecutor's reference to a third-party bystander at the crime scene as a "boss" was improper. (Id., p. 24.) Respondent asserts that the prosecutor's reference "man in the video, known as Mr. Thompson, as a 'boss' is not an improper" or prejudicial comment. (Id.) Respondent further notes that the prosecutor's reference to a "boss" was limited. (Id.) Respondent further contends that the "comments did not mislead the jury" or "divert attention to extraneous matters." (Id.) Accordingly, Respondent argues that Petitioner was not prejudice by trial counsel's failure to object. (Id.)

Second, Respondent considers Petitioner's claim that the prosecutor's comments were improper regarding the credibility of various witnesses and Petitioner's guilt (Document No. 11-18, pp. 5 – 6). (Id.) Respondent argues that the prosecutor did not assert his personal opinion as to credibility, but merely "outlined the supportive and damaging aspects of the witnesses' testimony" (ECF 11-18 at 6)." (Id.) Thus, Respondent asserts that the "prosecutor's statements did not constitute forbidden vouching and, therefore, could not have unfairly prejudiced him." (Id.) As to the prosecutor's comment regarding guilt, Respondent notes that trial counsel testified at the omnibus hearing "that he did not object to such comments because he did not want to draw

---

[7] The remaining challenged statements were improperly identified for the first time in Petitioner's Response to Respondent's Motion to Dismiss and for Summary Judgment. The undersigned additionally notes these challenges would be unexhausted and procedurally defaulted.

attention to them." (Document No. 11-18, p. 6.) (Id.) Respondent concludes that the "prosecutor's isolated comments did not mislead the jury and the overwhelming evidence supports the jury verdict." (Id., p. 26.) Respondent, therefore, argues that "trial counsel did not render ineffective assistance to Petitioner and Petitioner has failed to demonstrate that but for counsel's failure to object, the results of his trial would have been different." (Id.)

In Response, Petitioner first argues trial counsel was ineffective in failing to object to the prosecutor's reference to a non-party bystander (Mr. Thomas) as a "boss" causing the jury to draw impermissible inferences. (Document No. 22, pp. 23 – 26.) Specifically, Petitioner argues that the prosecutor deliberately misstated the evidence to intentionally mislead the jury. (Id.) Petitioner explains that "during his closing argument the prosecutor intentionally misstated the evidence stating that the 'evidence did not show who the man in the black Camaro was' and therefore, submitted to the jury that he was some kind of 'boss.'" (Id., p. 23.) Petitioner contends that evidence showed that Mr. Thompson was the occupant of the black Camaro. (Id., p. 24.) Petitioner notes that the trial court had already ruled that the parties were prohibited from mentioning Mr. Thompson's criminal history and reputation as it was irrelevant. (Id., p. 23.) Petitioner argues that "the prosecutor used a calculated argument to undermine the court's ruling. (Id., p. 24.) Petitioner claims that the "prosecutor could have used any label to describe Mr. Thompson," but chose to refer to him as a "boss" over Petitioner and his co-defendant. (Id.)

Second, Petitioner argues that the prosecutor improperly inserted his personal opinion about the credibility witnesses and his personal opinion as to Petitioner's guilt. (Id., pp. 26 – 27.) Petitioner states that "[d]uring the State's closing argument, [] the prosecutor made a conscience decision to argue things that made 'him' doubt defense witness's testimony and how unsure 'he' was about what the defense witness seen and how it was pretty incredible to believe someone

who couldn't identify a man that was at or near their doorstep, arguing that the witness's testimony being 'hard to believe.'" (Id., p. 26.) Concerning the creditability of the CI/victim, Petitioner complains that the prosecutor stated "this was not a situation where the [CI/victim] was in some terrible trouble. She didn't have some felony charge or something that she was getting out of . . . she's working for money." (Id., p. 19.) Petitioner contends that "the prosecutor then aligns himself with the CI/victim stating, 'I love my job, but I can't afford to volunteer to do it. So, I don't think working for money is an egregious, terrible thing.'" (Id.) Petitioner asserts that the "prosecutor inserted his personal opinion about the Petitioner's guilt . . . by stating that the Petitioner and co-defendant were on trial because of 'what they did.'" (Id., p. 22.) Finally, Petitioner contends that the prosecutor improperly stated his personal opinion as to Petitioner's guilt by arguing "to the jury that Petitioner was a guilty armed robber." (Id., p. 23.)

Initially, the Circuit Court thoroughly considered and rejected the substantive claim that the prosecutor's improper remarks constituted prosecutorial misconduct. (Document No. 11-14, pp. 13 – 21.) Specifically, the Circuit Court explained that "[h]aving reviewed the specific instances cited to by the Petitioner, the Court initially notes that the Petitioner has constructed his prejudicial comment claims by excising small portions of the trial transcript and developing his argument almost solely on the language used without any regard for the basis for the comment." (Id., p. 16.) The Circuit Court noted that Petitioner's arguments "wholly ignores the context of the prosecutor's statements in relation to the video evidence and testimony elicited by both the prosecutor and defense counsel during the course of the trial." (Id.) After evaluating the challenged remarks "in conjunction with the video evidence, direct and cross examination and the arguments of all counsel involved," the Circuit Court determined that none of the prosecutor's challenged remarks were improper or prejudicial. (Id., pp. 13 – 21.) After

identifying the Strickland standard and the equivalent West Virginia authority as the applicable precedent, the Circuit Court addressed Petitioner's ineffective assistance of counsel claim, in pertinent part, as follows:

> Accordingly, under the *Strickland/Miller* test, the Court finds and concludes counsel's performance was not deficient in not objecting to the various prosecutorial remarks raised by the Petitioner because they did not amount to impermissible inferences constituting improper prejudicial comments by the prosecutor.

> Even if the Court assumed, arguendo, the contested remarks constituted improper prosecutorial comments, the Court finds habeas relief still would not be warranted. If a petitioner successfully navigates the first hurdle of his ineffectiveness claim by establishing that his counsel's conduct fell below what the Court considers reasonably acceptable service, relief is not yet warranted. Before relief may be granted, the habeas petitioner must also establish by a preponderance of the evidence that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." Essentially this second prong is simply a determination of whether the petitioner has been unfairly prejudiced by counsel's deficient performance. The Court need only evaluate the contested comments under the factors of *Sugg* to determine the Petitioner falls short of establishing the level of prejudice necessary to constitute a constitutional violation warranting habeas relief. Under the first *Sugg* factor, the Court finds the contested remarks did not have a tendency to mislead the jury and prejudice the Petitioner. While there may have been insufficient evidence to place Mr. Thompson on trial, the video showing communication between the Petitioner and Petitioner's co-defendant, and between the Petitioner, Petitioner's co-defendant, and Mr. Thompson, and the ensuing actions that occurred following these communications, all supported the jury's finding that the ***Petitioner and Mr. Lee*** acted in concert during the commission of the robbery, regardless of any label the prosecutor may have placed on Mr. Thompson or what position or role Mr. Thompson may or may not have played. Moreover, the remaining comments were directly tied to evidence and argument that had occurred in the trial and during defense counsels' closing arguments, and therefore did not mislead the jury or otherwise prejudice the Petitioner to a level that influenced the jury's verdict.

> Analyzing the second and third factors of *Sugg*, the Court finds the remarks were not extensive, occupying only a minimal portion of the prosecutor's closing argument and, absent the remarks, the video evidence and testimony of the confidential informant and Shante Maddox, were strong evidence to support the Petitioner's convictions.

> As to the final factor of *Sugg* all of the contested comments complained of by the Petitioner readily fail, with the exception of the instance where the prosecutor commented on the unindicted occupant of the Camaro as a "boss." Unlike all of the Petitioner's other contested comments, this one, on its face,

49

appears to try to divert the jury's attention to extraneous matters. However, a closer inspection reveals otherwise. While perhaps a poor choice of words to characterize Mr. Thompson's role in the incident, the role or title given to Mr. Thompson by the prosecutor did not otherwise strengthen or diminish the video evidence showing communication between the Petitioner and Petitioner's co-defendant, and between the Petitioner, Petitioner's co-defendant, and Mr. Thompson, and the ensuing actions that occurred following these communications, all supported the jury's finding that the Petitioner and Mr. Lee acted in concert during the commission of the robbery.

Further, this Court found *supra* that while the prosecutor's various inferences may have pushed the limit of acceptable deductions, they did not exceed what could be reasonably deduced and argued therefrom. As the prosecutor at the time of the comment was making an argument regarding the video evidence of the interaction between the Petitioner, his co-defendant, and Mr. Thompson, this Court finds the contested comment was not deliberately placed before the jury to divert attention to extraneous matters, but rather was made as an inference to explain the actions taken during and immediately following communications with Mr. Thompson on the video. This coordinated action and confederation between the Petitioner and his co-defendant was part and parcel to the crimes the Petitioner and his co-defendant were on trial for. Accordingly, the Court finds the contested prosecutorial comment regarding a "boss" fails to meet the fourth *Sugg* factor as it was not deliberately put before the jury to divert attention to any extraneous matter.

While the Court's application of the facts to the foregoing *Sugg* factors are alone sufficient to show Petitioner is unable to establish the prejudice prong of *Strickland/Miller*, the Court's finding of no significant prejudice is additionally supported in the fact the Court specifically instructed the jury that the opening statements and closing arguments of counsel are not to be considered as evidence, but rather are to be viewed as the arguments of counsel as to their interpretation of what the evidence will be and then what the evidence shows. The Court also specifically instructed the jury

> it is not the policy of the law to convict people when the evidence is insufficient merely for the purpose of upholding the law and to make examples of persons to deter crime, nor is it the policy of the law to convict merely because an indictment has been returned or to satisfy public demand that the crime be prevented. But, on the contrary, it is much the duty of the jury to protect an innocent person as it is to convict the guilty. All your deliberations should be based solely upon the evidence.

Further, the Court went to great lengths to instruct the jury as to its exclusive duty to determine witness credibility and the weight to be given to that testimony, as well as factors the jury may use to make these determinations. Applying the foregoing to the prejudice prong of *Strickland/Miller*, the Court finds and concludes the Petitioner is unable to show by a preponderance of the evidence that but for counsel's failure to object to the prosecutor's remarks, the jury more likely than not would have acquitted the Petitioner. As such, consistent with state

and federal law, the Court finds and concludes the Petitioner is not entitled to any habeas relief upon his ineffective assistance of counsel claims regarding counsel's failure to object to multiple alleged instances where the prosecutor made improper, prejudicial comments during the prosecutor's closing argument.

(Document No. 11-14, pp. 24 - 28.) After identifying the Strickland standard and the equivalent West Virginia authority as the applicable precedent, the SCAWV addressed the issue, in pertinent part, as follows:

> We find no error in the habeas court's conclusion that the prosecutor's remarks related to the "boss" seen on the security footage were reasonable inferences that could permissibly be argued from the surveillance camera footage. Petitioner, Mr. Lee, and the "boss" are seen communicating, and petitioner is seen, as the court found, "chang[ing] the course of conduct" in response to the communication. It cannot be said that the prosecutor misstated the evidence or misled the jury as to the inferences it could draw.
>
> Regarding the comments as to petitioner's and other witnesses' credibility, we also find that the habeas court did not err in denying relief. We have noted that "*Critzer* does not prohibit comment by the prosecutor on the credibility of witnesses, but only the assertion of a personal opinion. It has been stated that the purpose of the *Critzer* rule is to prevent the use of the prosecutor's *status* as a means to bolster witness credibility." *England*, 180 W. Va. at 351, 376 S.E.2d at 557. Although "[c]redibility is to be determined solely by the triers, ... an advocate may point to the fact that circumstances or independent witnesses give support to one witness or cast doubt on another. The prohibition pertains to the advocate's personally endorsing, vouching for, or giving an opinion." *Id.* (citation omitted). As the habeas court observed, this is exactly what the prosecutor did. The prosecutor did not assert his personal opinion but, rather, outlined the supportive or damaging aspects of the witnesses' testimony.
>
> We observe, too, that petitioner's trial counsel testified at the omnibus hearing that, first, he believed the prosecutor's remarks to be fair inferences from the evidence, and, second, he chose not to object to the "flimsy" connection the prosecutor tried to make so as to avoid drawing attention to it. We decline to second guess this strategic decision. *See Miller*, 194 W. Va. at 6, 459 S.E.2d at 117, Syl. Pt. 6, in part.

(Document No. 11-18, pp. 5 – 6.)

First, Petitioner does not dispute that the Circuit Court and the SCAWV correctly referenced the Strickland standard as applicable law to Petitioner's ineffective assistance of counsel claim. Petitioner, however, appears to argue that the Circuit Court and the SCAWV

unreasonably applied <u>Strickland</u> to the facts of his case. Considering what arguments or theories supported, or could have supported the Circuit Court's and the SCAWV's decisions, the undersigned finds that fairminded jurists could not find that those arguments or theories are inconsistent with existing law. First, the undersigned considers the Circuit Court's and SCAWV's finding that the challenged remarks by the prosecutor were not improper or prejudicial. With respect to claims of prosecutorial misconduct, federal *habeas* review is available only upon a showing that the prosecutor's conduct was improper and that the conduct prejudicially affected the defendant's substantial rights so as to deprive the defendant of a fair trial. <u>United States v. Alerre</u>, 430 F.3d 681, 689 (4th Cir. 2005); <u>United States v. Mitchell</u>, 1 F.3d 235, 240 (4th Cir. 1993)(internal citations omitted). The test is whether the prosecutor's remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." <u>Darden v. Wainwright</u>, 477 U.S. 168, 181, 106 S.Ct. 2464, 2471-72, 91 L.Ed.2d 144 (1986)(quoting <u>Donnelly v. DeChristoforo</u>, 416 U.S. 637, 643, 94 S.Ct. 1868, 1871-72, 40 L.Ed.2d 431 (1974).). The fact that the comments are "undesirable or even universally condemned" is insufficient to establish a due process violation. <u>Id.</u> In determining whether the prosecutor's comments denied the defendant of a fundamentally fair trial, the Court should consider the following factors: "(1) the nature of the comments, (2) the nature and quantum of the evidence before the jury, (3) the arguments of opposing counsel, (4) the judge's charge, and (5) whether the errors were isolated or repeated." <u>Arnold v. Evatt</u>, 113 F.3d 1352, 1358 (4th Cir. 1997), <u>cert. denied sub nom.</u>, <u>Arnold v. Moore</u>, 522 U.S. 1058, 118 S.Ct. 715, 139 L.Ed.2d 655 (1998); <u>see also</u> <u>United States v. Harrison</u>, 716 F.2d 1050, 1052 (4th Cir. 1983), <u>cert. denied sub nom.Wissler v. United States</u>, 466 U.S. 972, 104 S.Ct. 2345, 80 L.Ed.2d 819 (1984). The Court must not review the prosecutor's comments in isolation. Rather, the remarks must be reviewed in

context of the entire proceedings to determine whether the comments violated the defendant's right to a fundamentally fair trial. See Mitchell, supra, 1 F.3d at 240; United States v. Young, 470 U.S. 1, 11, 105 S.Ct. 1038, 1044, 84 L.Ed.2d 1 (1985)("[A] criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone, for the statements or conduct must be viewed in context; only by so doing can it be determined whether the prosecutor's conduct affected the fairness of the trial.").

A review of each remark cited by Petitioner as an improper remark by the prosecutor reveals that such did not result in an unfair trial. First, Petitioner complains that the prosecutor improperly referred to Mr. Thompson as being the driver of the black Camaro and the "boss." Viewing the above remark in context of the evidence presented to the jury, the undersigned cannot find that the prosecutor assumed or argued facts not in evidence. During closing argument, the prosecutor showed the jury the surveillance video and directed the jury's attention to portions of the video that exhibited contact between Petitioner, the co-defendant, and the occupant of the Camaro. (TT Vol 2, pp. 23 – 28.) The prosecutor specifically identified an instance in the video showing contact between the occupant of the Camaro, the co-defendant, and Petitioner. (Id.) The prosecutor then noted the change in the course of conduct of the Petitioner, and the prosecutor referred to the occupant of the Camaro as the "boss." (Id.) Reviewing the above remark in context of the entire proceedings, the undersigned cannot find that the foregoing was an improper inference or misrepresentation of the evidence. Further, the remark was isolated occurring a total of three times. To the extent Petitioner claims that the prosecutor's above remark violated the trial court's prior ruling prohibiting the State from inquiring about Mr. Thompson's criminal record, such is without merit. The mere fact that the prosecutor referred to Mr. Thompson as the "boss" in no way resulted in the State inquiring

about Mr. Thompson's criminal record. The undersigned, therefore, finds that the state court's conclusion that trial counsel's failure to object to this remark did not have a reasonable probability of changing the verdict was not an objectively unreasonable determination. Accordingly, this claim should be dismissed.

Second, the undersigned considers Petitioner's challenges to the prosecutor's remarks regarding witness credibility. A review of the prosecutor's remarks in context reveals that the prosecutor's remarks were not an assertion of his personal opinion. Rather, the prosecutor pointed out the supportive or damaging aspects of these witnesses' testimony as attacked by the parties during the trial. The prosecutor argued that each witness's credibility should be evaluated based on the circumstances surrounding the witness's testimony and whether such was consistent with the video surveillance. The record further reveals that during closing arguments, the prosecutor repeated the instructions given by the trial court emphasizing that the evaluation and determination of credibility was for the jury to decide. Reviewing the prosecutor's challenged remarks concerning witness credibility in context of the entire proceedings, the undersigned cannot find the remarks were improper or prejudicial. Similarly, the state courts' conclusion that Petitioner failed to satisfy the Strickland standard was not objectively unreasonable. Accordingly, the state courts' determination was not so clearly in contravention of federal law that there is no room for "fairminded disagreement" with respect to the above claim and the claims should be dismissed.

Third, the undersigned considers Petitioner's challenges to the prosecutor's remarks regarding the prosecutor's personal opinion as to Petitioner's guilt. Petitioner contends that the prosecutor improperly commented as to Petitioner's guilt by stating the following: "I don't care what standard of proof you want to put on this case. We met it with Mr. Goard. He is a guilty

armed robber." A review of the prosecutor's closing arguments in context reveals that the prosecutor was arguing what the evidenced as a whole showed. Additionally, prosecutor expressed to the jury throughout the prosecutor's rebuttal closing argument that the jury's decision should be based on a review of the evidence and ascertaining the truth. Further, the effect of the remark was minimal because it was isolated. The remarks were confined to a few sentences of the prosecutor's closing argument and was not persistent. Thus, the undersigned state courts' conclusion was not objectively unreasonable in finding that the above remarks were not improper or prejudicial. Similarly, the state courts' conclusion that Petitioner failed to satisfy the <u>Strickland</u> standard was not objectively unreasonable. During the omnibus hearing, trial counsel further testified that he did not view remarks as improper or unfairly prejudicial. (Document No. 11-13, pp. 36 - 41.) Trial counsel testified that he viewed objecting to a remark made in closing arguments as often having the negative effect of calling the jury's attention to the statement in question; thus, causing more harm than good. (<u>Id.</u>) The state courts determined that Petitioner was unable to show that trial counsel's failure to object had any influence on the outcome of the trial. A thorough review of the record reveals that substantial evidence of Petitioner's guilt was introduced during the underlying trial. Accordingly, the state courts' conclusion that Petitioner failed to satisfy the <u>Strickland</u> standard was not objectively unreasonable. Furthermore, the undersigned finds that Petitioner has failed to show he is entitled to overcome the deference due to the state courts' conclusion as to this claim, and the claim should be dismissed.

### 2.    Insufficient Evidence of Conspiracy to Commit Robbery:

In Ground Three, Petitioner claims there was insufficient evidence to support his conviction of conspiracy to commit robbery. (Document No. 2, p. 11.) In support, Petitioner

states that "the State produced no evidence that Petitioner and Petitioner's co-defendant knew each other prior to the event nor did the State show that the two agreed with one another to commit the robbery or showed an overt act in furtherance of a common scheme." (Id.) Petitioner argues "there were simply no evidence that showed that Petitioner and his co-defendant were working in concert to commit the First-Degree Robbery offense." (Id.) Petitioner further concludes "[s]ubstantial evidence did not exist upon which the jury could have found Petitioner guilty of Conspiracy to Commit Robbery." (Id.)

In his Motion for Summary Judgment, Respondent asserts that the SCAWV found that the CI/victim's testimony and surveillance video sufficiently supported the Conspiracy conviction. (Document No. 14 and Document No. 15, pp. 26 – 27.) Respondent notes that insufficient evidence claims are "subject to two layers of judicial deference." (Document No. 15, p. 26.) Respondent then summarizes the evidence noting that the CI/victim testified the co-defendant approached her and Petitioner as the Petitioner was attempting to take her purse. (Id., p. 27.) Respondent claims that the CI/victim then testified that the co-defendant pulled a handgun directing that the CI/victim to give her purse to Petitioner. (Id.) Respondent argues that the co-defendant's "action and direction to the CI constitute the overt act to effectuate the conspiracy." (Id.) Respondent further states that "[a]s the SCAWV found, the surveillance video corroborated the CI's statements that [the co-defendant] walked towards her and Petitioner signaled [the co-defendant]." (Id.) Finally, Respondents claims that the video showed Petitioner stopped and interacted with the co-defendant before fleeing the scene. (Id.) Therefore, Respondent argues that Petitioner fails "to demonstrate that the SCAWV's decision that the evidence, when viewed in the light most favorable to the State, crediting all inference and credibility assessment in the State's favor, was objectively unreasonable or contrary to or constituted an unreasonable

application of federal law." (Id.)

In Response, Petitioner continues to argue there was insufficient evidence to support his Conspiracy conviction. (Document No. 22, pp. 27 - 34.) Petitioner contends that the evidence merely showed that "[a]fter a moment of back and forth with the Petitioner and the victim over the purse . . ., co-defendant arrives on the scene and approached Petitioner and the victim asking what was going on." (Id., p. 30.) Petitioner claims the record reveals that "once co-defendant discovered that the victim was wearing a wire he withdrew from Petitioner and the victim." (Id.) Petitioner claims that "he then struck the victim which caused her to 'give up fighting' for the purse which Petitioner was then able to take." (Id.) Petitioner asserts that "once the victim returned to the vehicle, the only person the victim mentioned to the officers was 'JJ Goard.'" (Id.) Petitioner asserts that "[t]he prosecutor even admitted that prior to co-defendant's arrival on the scene depicted on the surveillance video, you couldn't even see co-defendant in the breezeway during the drug exchange." (Id.) Petitioner argues "the only evidentiary connection of an agreement of some kind came from the prosecutor's improper statements and the admission of the white powdery substance found in the apartment." (Id.) Petitioner argues there was no indication that Petitioner and the co-defendant were acting together. (Id., pp. 31 – 32.) Petitioner claims that the record reveals that "Petitioner's attempt in taking the purse prior to his co-defendant arriving on the scene does not demonstrate Petitioner and his co-defendant agreeing with one another to take the purse from the CI/victim, which again, was clearly the Petitioner's initial intention." (Id.) Petitioner argues that the jury did not find the CI/victim's testimony truthful as to the co-defendant pulling a handgun and directing the CI/victim to give Petitioner the purse because "they did not find the co-defendant used a firearm during the commission of the crime." (Id., p. 33.) Petitioner further argues that he disagrees with the SCAWV's finding

that the surveillance video corroborates the CI/victim's statements that (1) Petitioner's co-defendant walked towards the CI/victim and Petitioner signaled his co-defendant, or (2) Petitioner stopped and interacted with his co-defendant before running away. (Id.)

Regarding Petitioner's above *habeas* claim, the Circuit Court addressed the issue, in pertinent part, as follows:

> The Petitioner would also have this Court view the fact that the jury did not find the use of a firearm during the commission of the robbery as indicative that the jury did not find any of the confidential informant's testimony credible and, as such, her remaining testimony cannot be considered sufficient to support the Petitioner's conviction of conspiracy to commit a felony. This Court will not take such a view, however, as it is well established that credibility determinations are for the jury, as are determinations of the weight to be given to evidence presented during trial. Therefore, the Court is left to look only at the evidence presented at the underlying trial in a light most favorable to the prosecution to determine whether Petitioner is entitled to relief upon his claim. The confidential informant testified that upon the Petitioner communicating with his co-defendant that the confidential informant had a wire on her, the co-defendant then pointed a gun at her, threatened her, and told her to give the Petitioner the purse. The confidential informant further testified that it was at this point that she ceased to struggle, put her head down, and the Petitioner jerked the purse off her shoulder. The video evidence presented at the trial also corroborated much of the testimony of the confidential informant, particularly as to communication, contact, and confederation between the Petitioner and his co-defendant during the robbery and following the robbery. The fact that the jury did not make a finding that a firearm was used in the commission of the robbery, does not show that the jury found the confidential informant's testimony incredible, but rather reinforces the fact that the jury followed the Court's instructions and evaluated the credibility of the confidential informant along with the weight of the other evidence and determined that the testimony and evidence as a whole was insufficient to support a finding beyond a reasonable doubt that a firearm was used.
>
> Looking at this evidence in a light most favorable to the prosecution, this Court finds that it is sufficient to support Petitioner's conviction for conspiracy to commit the felony of robbery. The Court finds the video evidence showed various moments that a rational juror could have reasonably determined was proof of communication and direction during a common scheme or plan between the Petitioner and his co-defendant. Moreover, when the video evidence is taken in conjunction with the testimony of the confidential informant, this Court finds it was more than sufficient to sustain Petitioner's convictions. This finding of

sufficient evidence to support the Petitioner's conviction of conspiracy to commit a felony is consistent with that made by the West Virginia Supreme Court of Appeals during its analysis of the issue on its review of the co-defendant's conviction.

(Document No. 11-14, pp. 37 – 39.) The SCAWV affirmed the Circuit Court's findings addressing the above claim, in pertinent, part as follows:

> To address petitioner's assertion that the State failed to show "some agreement between" petitioner and Mr. Lee, we point to *Less*: "The agreement may be inferred from the words and actions of the conspirators, or other circumstantial evidence, *and the State is not required to show the formalities of an agreement.*" *Id.* at 265, 294 S.E.2d at 67 (emphasis added) (citations omitted). The evidence, when viewed in the light most favorable to the State and crediting all inferences and credibility assessments in the State's favor, was sufficient to support petitioner's conspiracy to commit robbery conviction. The CI testified that petitioner was attempting to wrest the CI's purse from her, that Mr. Lee approached the two and asked what was going on, that petitioner informed Mr. Lee that the CI was wearing a wire, that Mr. Lee demanded that the CI give petitioner the purse, that the CI stopped resisting, and that petitioner succeeded in taking the purse and its contents. Mr. Lee's demand that the CI give petitioner the purse constitutes an overt act, and the surveillance footage largely corroborated the CI's testimony. The habeas court did not err in denying relief on this ground.

(Document No. 11-18, p. 8.)

"[T]he Due Process Clause of the Fourteenth Amendment protects a defendant in a criminal case against conviction 'except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." Jackson v. Virginia, 443 U.S. 307, 315, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The United States Supreme Court held that "evidence is sufficient to support a conviction whenever, 'after reviewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Parker v. Matthews, 567 U.S. 37, 44, 132 S.Ct. 2148, 2153, 183 L.Ed.2d 32 (2012)(quoting Jackson, 443 U.S. at 319, 99 S.Ct. 2781).

When determining in a Section 2254 proceeding whether the above due process right has been violated, a court should "inquire whether a state court determination that the evidence was sufficient to support a conviction was an objectively unreasonable application of [the standard enunciated in] *Jackson*." Williams v. Ozmint, 494 F.3d 478, 489 (4th Cir. 2007)(internal citations and quotations omitted)("To determine whether this due process right has been violated, the appropriate inquiry *before the passage of AEDPA* was a straightforward question of whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.")(emphasis added). Under this "deferential federal standard," a federal *habeas* court should not "unduly impinge . . . on the jury's role as factfinder." Coleman v. Johnson, 556 U.S. 650, 654, 132 S.Ct. 2060, 2064, 182 L.Ed.2d 978 (2012). The Supreme Court explained that "*Jackson* leaves juries broad discretion in deciding what inferences to draw from the evidence presented at trial, requiring only that jurors 'draw reasonable inferences from basic facts to ultimate facts.'" Id.(quoting Jackson, 443 U.S. at 319, 99 S.Ct. 2781)(stating that the "deferential standard" does not permit "fine-grained factual parsing.")

The undersigned finds that Petitioner's above claim is without merit because there is no evidence that the Circuit Court's or the SCAWV's determination was contrary to, or an unreasonable application of, clearly established federal law; or based on an unreasonable determination of facts. In deciding the above issue, the state courts applied a standard of review consistent with the federal standard in Jackson, and it was not unreasonable for the SCAWV to find that the video, testimonial, and circumstantial evidence against Petitioner was sufficient to support the jury's determination that Petitioner was guilty of Conspiracy to Commit Robbery. According to statute, first degree robbery is defined as any person "[c]omitting violence to the

person, including, but not limited to, partial strangulation or suffocation or by striking or beating; or (2) uses that threat of deadly force by the presenting of a firearm or other deadly weapons." W. Va. Code § 61-2-12. To prove a conspiracy under W. Va. Code § 61-10-31(1), the State "must show that the defendant agreed with others to commit an offense against the State and that some overt act was taken by a member of the conspiracy to effect the object of that conspiracy." Syl. Pt. 4, State v. Less, 170 W. Va. 259, 294 S.E.2d 62 (1981). West Virginia Code § 61-10-31 defines the offense of conspiracy as follows:

> It shall be unlawful for two or more persons to conspire (1) to commit any offense against the State or (2) to defraud the State, the state or any county board of education, or any county or municipality of the State, if, in either case, one or more of such persons does any act to effect the object of the conspiracy.

A review of the trial transcripts reveal that sufficient evidence existed for the jury to conclude that Petitioner committed first degree robbery and conspiracy to commit a felony. (Document Nos. 14-1 and 14-2.) Taken in the light most favorable to the prosecution, the trial transcripts further reveal that any rational trier of fact could have found that Petitioner was attempting to take the CI/victim's purse, the co-defendant approached to Petitioner and CI/victim inquiring what was going on, Petitioner informed the co-defendant that the CI/victim was wearing a wire, the co-defendant pulled a handgun directing that the CI/victim give Petitioner the purse, and the CI/victim gave Petitioner the purse. The CI/victim's testimony was largely corroborated by the surveillance video evidence. The co-defendant's direction for the CI/victim to give the purse to Petitioner constitutes the overt act. Although Petitioner alleges the jury did not find the CI/victim's testimony truthful as to the co-defendant pulling a handgun and directing the CI to give Petitioner the purse because "they did not find the co-defendant used a firearm during the commission of the crime," such a speculation is insufficient. It is the duty of the jury to

determine the creditability of witnesses and what weight to assign the evidence presented. See Jones v. Seifert, 808 F.Supp.2d 900, 924 (S.D.W.Va. 2011)(dismissing petitioner's sufficiency of evidence claim based on the argument that the victims' testimony was false because the jury rejected such by finding the petitioner guilty); Lucas v. McBride, 505 F.Supp.2d 329, 358 (N.D.W.Va. 2007)("The issue raised by the petitioner in his petition to support his claim that there is insufficient evidence to support his conviction are all related to the credibility of the witnesses and the weighing of evidence. Those are issues that were resolved by the jury at trial and are not within the province of federal habeas review."). Thus, it is inappropriate to substitute the jury's credibility determine for one conducted by Petitioner or this Court. The undersigned further finds that based on the ample evidence presented at trial, a rational jury could have found sufficient evidence to convict Petitioner of both first degree robbery and conspiracy to commit a felony. See Cavazos v. Smith, 565 U.S. 1, 132 S.Ct. 2, 181 L.Ed.2d 311 (2011)(applying the standard in *Jackson* to reinstate a state jury verdict despite considerable discrepancy in the narratives presented by the parties and lack of conclusive evidence); Williams v. Ozminit, 494 F.3d at 490 (finding that a state supreme court's affirmation of a jury verdict based on circumstantial evidence was not objectively unreasonable under Jackson). Based upon the foregoing, the undersigned cannot find that the SCAWV's determination that the evidence was sufficient to support Petitioner's convictions was an objectively unreasonable application of the Jackson standard. Accordingly, the undersigned respectfully recommends that the District Court deny Ground Three.

Based upon the foregoing, the undersigned respectfully recommended that the District Court grant Respondent's "Motion to Dismiss and for Summary Judgment" (Document No. 14) and deny Petitioner's Motion for Stay and Abeyance (Document No. 18).

## PROPOSAL AND RECOMMENDATION

The undersigned therefore hereby respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the District Court **GRANT** Respondent's "Motion to Dismiss and for Summary Judgment" (Document No. 14), **DENY** Petitioner's Motions for Stay and Abeyance (Document Nos. 18 and 23), and remove this matter from the Court's docket.

The parties are hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge John T. Copenhaver, Jr. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing of this Proposed Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155, 106 S.Ct. 466, 475, 88 L.Ed.2d 435 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.) cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.Ed.2d 352 (1984). Copies of such objections shall be served on opposing parties, Judge Copenhaver, and this Magistrate Judge.

The Clerk of this Court is directed to file this "Proposed Findings and Recommendation" and to send a copy of the same Petitioner, who is acting *pro se*, and to counsel of record.

Dated: December 20, 2023.

Omar J. Aboulhosn
United States Magistrate Judge

64