UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

JORDAN J. GOARD,

        Petitioner,

v.                              Case No. 2:22-cv-00470

DONNIE AMES, Superintendent,
Mt. Olive Correctional
Complex

        Respondent.

MEMORANDUM OPINION AND ORDER

        Pending are the objections by petitioner Jordan J.
Goard to the Proposed Findings and Recommendations filed on
December 20, 2023, by Magistrate Judge Aboulhosn.  See Proposed
Findings and Recommendations, ECF No. 24 (hereinafter "PF&R");
Petitioner's Objections to Proposed Findings and Recommendation,
ECF No. 28 (hereinafter, "Objections").  In the PF&R, Magistrate
Judge Aboulhosn recommended that the court: (1) grant Respondent
Donnie Ames' "Motion to Dismiss and for Summary Judgment," ECF
No. 14; (2) deny Petitioner's "Motion for Stay and Abeyance,"
ECF No. 18; and (3) deny Petitioner's second "Motion for Stay
and Abeyance," ECF No. 23.  See PF&R 63-64.

1

## I.   Factual Background

Petitioner Jordan A. Goard ("petitioner"), an inmate at the Mount Olive Correctional Complex in Mount Olive, West Virginia, was convicted in 2017 of one count of conspiracy to commit a felony and one count of first-degree robbery.  See State v. Goard, No. 17-0712, 2018 WL 3005955, at *2 (W.Va. June 15, 2018) ("Goard I") (affirming petitioner's conviction and sentence).

The following is the summary of the factual background as articulated by the Supreme Court of Appeals of West Virginia in its ruling denying petitioner habeas relief.  Petitioner has not challenged the accuracy of this summary:

> In 2017, petitioner was indicted for one count of conspiracy to commit a felony, one count of first-degree robbery, and one count of grand larceny, but the grand larceny charge was later dismissed. These charges stemmed from a controlled drug buy from petitioner initiated by a confidential informant ("CI") at an apartment complex. The police outfitted the CI with a purse containing a camera to record the transaction and provided money for the buy. Following the CI's purchase of what was purported to be cocaine, the CI left the apartment complex and started through the parking lot. Petitioner, believing the CI to be wearing a wire, followed her and then accosted her. When she tried to get away, petitioner picked her up; carried her back toward the apartments; and, according to the CI's testimony at trial, "slammed [her] down on the curb and then tried to jerk the purse off." Robert Lee, who was later indicted for

2

> his involvement in this crime and tried
> together with petitioner, approached
> petitioner and the CI and asked what was going
> on. Petitioner informed Mr. Lee that the CI
> was wearing a wire, at which point, according
> to the CI, Mr. Lee pointed a handgun at her
> and instructed her to give petitioner the
> purse or he would shoot her. Petitioner struck
> the back of the CI's head, which caused the CI
> to stop resisting and enabled petitioner to
> jerk the purse loose from her body. The
> altercation was captured by the apartment
> complex's surveillance cameras. Both
> petitioner and Mr. Lee were convicted of
> conspiracy and first-degree robbery, but the
> jury did not make a finding that Mr. Lee used
> a firearm in committing the robbery.

Goard v. Ames, No. 21-0370, 2022 WL 1684661, at *1 (W.Va. May 26, 2022) ("Goard II") (denying petitioner state habeas relief). Petitioner and Robert Lee (hereinafter "petitioner's co-defendant" or "co-defendant Lee") were jointly tried for their robbery and conspiracy charges. At trial, the State introduced evidence of a small bag of "white powdery substance," which had never been tested, that the police had recovered from co-defendant Lee's apartment hours after the robbery. See Trial Transcript, 200:15-15, 201-208, 222:7-223:4, ECF No. 14-1. Co-defendant Lee accepted ownership of the bag. Id. at 219:11-13. Petitioner's counsel did not object to the admission of the bag as evidence at trial.

## II.  Procedural History

3

The Supreme Court of Appeals of West Virginia ("WVSCA") affirmed petitioner's conviction on June 15, 2018. See Goard I.  Petitioner did not file a petition for writ of certiorari to the Supreme Court of the United States.  On July 19, 2019, petitioner filed a pro se petition for habeas corpus in the Fayette County Circuit Court alleging six grounds of relief.  See "Petition for a Post-Conviction Writ of Habeas Corpus," ECF No. 11-9 (hereinafter, "State Habeas Pet.").

The Circuit Court thereafter appointed counsel for petitioner, who then filed an amended habeas petition on April 27, 2020, alleging nine grounds of relief.  See Amended Petition for a Writ of Habeas Corpus Ad Subjiciendum with Incorporated Memorandum of Law, ECF No. 11-10 (hereinafter, "Amended State Habeas Pet.").  On April 12, 2021, the Circuit Court of Fayette County denied and dismissed petitioner's amended petition.  See Order Denying and Dismissing Petition, ECF No. 11-14.  By counsel, petitioner appealed the Circuit Court's decision to WVSCA on three grounds, including an ineffective assistance of trial counsel claim that had five subparts.  See Petitioner's Brief, ECF No. 11-15.  On May 26, 2022, WVSCA affirmed the decision of the Circuit Court.  See Goard II.

On October 26, 2022, petitioner, acting pro se filed the instant Petition under 28 U.S.C. § 2254 for a Writ of Habeas

4

Corpus by a Person in State Custody.  ECF No. 2 (hereinafter,

"Federal Habeas Petition").  Therein, petitioner asserted the

following grounds for relief:

    1. Ineffective Assistance of Counsel:

        A. Trial counsel failed to undertake an

           independent investigation and properly prepare

           himself for trial,

        B. Trial counsel failed to object to prejudicial

           evidence introduced to the jury and admitted

           into evidence,

        C. Trial counsel failed to request adequate jury

           instruction,

        D. Trial counsel failed to identify and object to

           faulty robbery instruction,

        E. Trial counsel failed to object to improper and

           inflammatory remarks made by the prosecutor

           during the closing and rebuttal argument, and

        F. Appellate counsel failed to raise multiple

           meritorious grounds on direct appeal;

    2. Prejudicial statements made by prosecutor during

      closing and rebuttal argument:

        A. Prosecutor inflamed the passion of the jury,

        B. Prosecutor bolstered and/or vouched for the

           credibility of the State's witness,

      C. Prosecutor asserted his personal opinion to the incredibility of the defense witnesses,

      D. Prosecutor purposely misstated evidence and/or misled the jury, and

      E. Prosecutor argued facts that were not in evidence;

3. Insufficient evidence;

4. Disproportionate sentence;

5. Failure to instruct;

6. Prejudicial joinder;

7. Defective robbery instructions; and

8. Cumulative error.

Federal Habeas Petition, ECF No. 2. Respondent Donnie Ames, superintended of the Mount Olive Correctional Complex, filed a "Motion to Dismiss and for Summary Judgment" and an accompanying memorandum of law in support of that motion. ECF Nos. 14, 15 (filed April 29, 2023). In respondent's motion, respondent argues, <u>inter alia</u>, that Grounds 1(A), 1(C), 1(D), 1(f), 2, 4, 5, 6, 7, and 8 were not presented to WVSCA and should thus be dismissed as procedurally defaulted.

On May 15, 2023, Petitioner filed a Motion for Stay and Abeyance. <u>See</u> Pet. Mot. for Stay and Abeyance, ECF No. 18. On August 20, 2023, petitioner filed a response in opposition to

respondent's motion.  See "Petition's Response to Respondent's Motion to Dismiss and Summary Judgment," ECF No. 22 (hereinafter "Pet. Mot. for Summ. J. Resp.").  On December 18, 2023, Petitioner filed his second Motion for Stay and Abeyance.  See Pet. Second Mot. for Stay and Abeyance, ECF No. 23.

In the PF&R, Magistrate Judge Aboulhosn recommended that the court deny both of petitioner's Motions for Stay and Abeyance and grant respondent's Motion to Dismiss and for Summary Judgment,[1] which would dismiss this matter in its entirety.  After the court granted petitioner an extension, petitioner filed timely objections to the PF&R on January 23, 2024.  See Objections, ECF No. 28.

Therein, petitioner objected to the PF&R on four broad grounds, some of which have subparts or sub-subparts. Petitioner's numbering is inconsistent and some objections are duplicitous, see ECF No. 28, but the below list of petitioner's objections exactly mirrors his organization for ease of reference.  His objections are as follows:

---

[1] The PF&R is not clear whether it treats respondent's motion as a motion to dismiss, a motion for summary judgment, or both in the alternative.  However, in its analysis, the PF&R at various points refers to the respondent's "Motion for Summary Judgment."  PF&R, at 32, 40, 56.  Accordingly, the court reviews the PF&R as if it were ruling on a motion for summary judgment.

A. Objection to PF&R's conclusion regarding
   procedurally defaulted claims with regard to:

   1. PF&R's alleged failure to acknowledge the mixed
      nature of the petition,

   2. PF&R's finding that petitioner should not be
      excused from the exhaustion requirement, and

   3. PF&R's characterization of petitioner's direct
      review appellate counsel's actions;

B. Objection to the PF&R's conclusion as to
   petitioner's ineffective assistance of counsel claim
   with regard to:

   I.  Trial counsel's failure to object to
       prejudicial evidence:

       1. PF&R's characterization of certain facts,

       2. PF&R's adoption of the state habeas
          court's conclusion that trial counsel's
          failure to object to admission of certain
          evidence did not fall below an objective
          standard of reasonableness,

       3. PF&R's adoption of the WVSCA's
          affirmation of the state habeas court's
          conclusion in B(I)(2),

4. The same as in B(I)(2), inasmuch as the failure to object failed to preserve the issue for direct appeal,

5. PF&R's conclusion that the failure to object was harmless because the failure lost the issue for direct appeal, and

6. PF&R's summary of the Circuit Court's limitation of the testimony of certain witnesses;

II.   Trial counsel's failure to object to prosecutor's improper and inflammatory remarks

1. Inasmuch as the PF&R failed to address a prosecutor's statement that an unknown party may be "some kind of boss,"

2. Inasmuch as the PF&R found this claim improperly pled;

III.   (1) Trial counsel's failure to request an incidental jury instruction;

C. (1) PF&R's alleged failure to address petitioner's cumulative error of trial counsel claim;

D. Objections to the PF&R's conclusions regarding the sufficiency of evidence of conspiracy with regard to:

1. The PF&R's general conclusion that petitioner's claims do not meet the standard required under § 2254 for habeas relief,

2. The same, with regard to the PF&R's conclusion that evidence was sufficient to support the jury's determination that petitioner was guilty of conspiracy,

3. The PF&R's alleged failure to acknowledge that the jury found that there was no firearm used during the commission of the underlying crime,

4. The PF&R's conclusion that there existed an "agreement" to support a finding of conspiracy,

5. The PF&R's alleged failure to acknowledge that the jury did not find the victim's testimony as to the use of a gun during the underlying criminal act to be truthful, and

6. The same objection as in D.I.

See generally Federal Habeas Petition, ECF No. 28.  Petitioner did not object to the PF&R's recommendation that his Motions for Stay and Abeyance be denied.  See id.; PF&R, at 26, 63 (recommending denial).

### III. Legal Standard Governing Objections

Under Federal Rule of Civil Procedure 72(b), "a party

may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b). A district judge "must determine <u>de novo</u> any part of the magistrate judge's disposition that has been properly objected to." <u>Id.</u> In particular, "a general objection . . . is insufficient to avoid waiver." <u>Page v. Lee</u>, 337 F.3d 411, 416 n.3 (4th Cir. 2003) (noting also that "other circuits have held that the failure to raise an objection sufficiently specific to focus the district court's attention on the factual and legal issues that are truly in dispute waives any appellate review" (quotation marks omitted)). <u>See</u> <u>also</u> <u>Howard v. Sec'y of Health & Human Servs.</u>, 932 F.2d 505, 508–09 (6th Cir. 1991); <u>Lockert v. Faulkner</u>, 843 F.2d 1015, 1019 (7th Cir. 1988). "The burden of proving that a claim is exhausted lies with the habeas petitioner." <u>Breard v. Pruett</u>, 134 F.3d 615, 619 (4th Cir. 1998).

## IV.  Petitioner's Objections

The court turns to petitioner's objections to the PF&R, addressing each either individually or as a cluster, when appropriate.

### a.   Procedurally Barred Claims

Several of petitioner's objections pertain to the PF&R's conclusion that certain of petitioner's claims in his

11

federal habeas petition were not exhausted and were procedurally barred.  See Objections A(2), B(III)(1), C(1).

Judge Tinsley concluded that Petitioner did not present to WVSCA Grounds 1(A), 1(C), 1(D), 1(f), 2, 4, 5, 6, 7, and 8 of Petitioner's federal habeas petition.  PF&R, at 24. Judge Tinsley accordingly concluded that such claims were not exhausted and did not satisfy § 2254's exhaustion requirement. Id.  Judge Tinsley further concluded that "there is no allegation or indication that Petitioner should be excused from the exhaustion requirement."  Id.  Judge Tinsley then determined that because such claims would now be procedurally barred in state court on independent and adequate state grounds, the claims are procedurally barred and cannot now be heard in federal court.  Id. 25-26.  Judge Tinsley concluded that petitioner "has failed to show cause and prejudice or a fundamental miscarriage of justice that would excuse his procedural default" and recommended that the court "find Subparts A, C, D, and F of Ground One and Grounds Two, Four, Five, Six, Seven, and Eight are procedurally defaulted and must be dismissed.  Id. at 29.

In Objection A(2), Petitioner objects to the PF&R's finding that "there is no allegation or indication that Petitioner should be excused from the exhaustion requirement."

<u>Id.</u> at 24.  In support of this objection, he argues that "at no fault of the [p]etitioner's, and at his complete disgust," his state habeas appellate counsel ignored petitioner's request to appeal "every ground that was raised and argued in the [h]abeas [p]roceedings" raised on appeal.  Objections, at 2-3. Petitioner contends that despite petitioner's instruction, his state habeas appellate counsel "merely mentioned the claims in a footnote," even though counsel should have known that such a failure to "adequately brief" those claims would waive them. <u>Id.</u>  Petitioner asserts that "[a]ppellate counsel deliberately failed to properly raise the now procedurally defaulted claims, instead, (sic) attempted to preserve those claims for federal habeas review in a footnote."  <u>Id.</u>  In essence, petitioner objects to the PF&R's conclusion that he is not excused from the exhaustion requirement.  Because petitioner makes Objection A(II) under a heading entitled, "Procedural Default," the court will also construe petitioner's argument such that he alternatively argues that he is also excused from procedural default.

 28 U.S.C. § 2254(b) provides that,

 (1)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that –
  (A)  the applicant has exhausted the remedies available in the courts of the State; or

> (B)
>> (i) there is an absence of available State corrective process, or
>> (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b). Accordingly, federal courts may not review a § 2254 petition unless the presented issues have been completely exhausted under state law. See Rose v. Lundy, 455 U.S. 509, 522 (1982). When a petitioner presents a "mixed petition," a petition that contains exhausted and non-exhausted claims, the court may dismiss the petition entirely, order a stay and abeyance to permit the petitioner to exhaust his claims in state court, or allow the petitioner to proceed only on the exhausted claims. See Rhines v. Weber, 544 U.S. 269, 275-77 (2005). To be excused from the exhaustion requirements, the petitioner must establish that "there is an absence of available State corrective process" or that "circumstances exist that render such process ineffective to protect the rights of the applicant." § 2254(b)(1)(B).

Further, a "federal court may not review federal claims that were procedurally defaulted in state court – that is, claims that the state court denied based on an adequate and independent state procedural rule." Davila v. Davis 592 U.S. 521, 527 (2017). This rule is a "corollary" to the exhaustion requirement. Id. (citing Dretke v. Haley, 541 U.S. 386, 392 (2004)). Procedural default is excusable "under the cause and prejudice standard when

14

the petitioner demonstrates (1) that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule, and (2) that errors at his trial . . . worked to his <u>actual</u> and substantial disadvantage, infecting his entire trial with errors of constitutional dimensions." <u>Wolfe v. Johnson</u>, 565 F.3d 140, 158 n.27 (4th Cir. 2009) (internal citations omitted) (emphasis in original).  It has "long been the rule" that ineffective assistance of counsel "is an objective external factor providing cause for excusing a procedural default," but that is only true where "the error amount[s] to a deprivation of the constitutional right to counsel." <u>Davila</u>, 582 U.S. at 528. Because there is no constitutional right to appellate counsel on state collateral review, procedural default cannot be excused on the basis of ineffective assistance of appellate counsel when "a prisoner's state postconviction counsel provides ineffective assistance by failing to raise" a particular claim on state habeas review. <u>Id.</u> at 529.

It is undisputed that Subparts A, C, D, and F of Ground One and Grounds Two, Four, Five, Six, Seven, and Eight were never presented to WVSCA and are thus not exhausted.  See Pet. Mot. for Stay and Abeyance, at 4, ECF No. 18; Pet. Mot. for Summ. J. Resp., at 6; Pet. Second Mot. for Stay and Abeyance, at 2, ECF No. 23. It is additionally undisputed that those claims have been procedurally defaulted.  <u>See</u> Pet. Mot. for Summ. J. Resp., at 6.  Petitioner contends that his state habeas "[a]ppellate counsel deliberately

15

failed to properly raise the now procedurally defaulted claims, instead, attempted to preserve those claims for federal habeas review in a footnote," rather than presenting those claims squarely, as required by state law, to WVSCA.  Objections, at 3. However, because ineffective assistance of habeas appellate counsel does not excuse procedural default, petitioner's objection that his procedural default of Subparts A, C, D, and F of Ground One and Grounds Two, Four, Five, Six, Seven, and Eight is excused should be denied.  Because the PF&R correctly found that ineffective assistance of appellate counsel does not excuse procedural default, Petitioner's Objection A(2) is overruled.

Because it was found in the PF&R that Subparts A, C, D, and F of Ground One and Grounds Two, Four, Five, Six, Seven, and Eight were procedurally defaulted, there was no further substantive discussion of those grounds.

Petitioner's Objection B(III)(1), objecting to the "PF&R's complete failure to acknowledge and address [p]etitioner's claim that counsel was ineffective for failing to request an incidental jury instruction," and Objection C(1), objecting to the "PF&R's complete failure to acknowledge and address Petitioner's cumulative error of trial counsel claim," correlated to procedurally defaulted grounds of his petition — namely, Ground Five, "Failure to Instruct," and Ground Eight, "Cumulative Error."  Objections, at 2-3, 10; see Federal Habeas

Petition at 13-14, 17-19.  Petitioner's Objections B(III)(1) and
C(1) are also overruled inasmuch as the PF&R addressed them by
finding that they have been procedurally defaulted,

   b.   Objections Regarding PF&R's Framing of Facts

        Various of petitioner's objections relate to the
PF&R's interpretation or framing of either his habeas petition,
his response to respondent's motion, or the facts of the case.
The court will address each in turn.

        Petitioner's objection A(1) is that the PF&R allegedly
"fail[ed] to acknowledge that [p]etitioner presented a mixed
petition."  Petitioner then asserts that "[u]nder [42 U.S.C.] §
2254, when a [p]etitioner presents a mixed petition, the
[d]istrict [c]ourt may . . . order a stay and abeyance while
[p]etitioner exhausts his claims in the [s]tate [c]ourt."  Id.
at 2.  Though the PF&R did not explicitly address the Federal
Habeas Petition as a "mixed petition," the PF&R did thoroughly
address the fact that some of petitioner's claims were exhausted
and some were not.  See PF&R at 23 (articulating the standard
for a stay and abeyance when facing a mixed petition), 24
(describing which grounds of the petition were exhausted and
which were not), 26 (articulating why a stay and abeyance would
be futile).  Inasmuch as the PF&R sufficiently acknowledged the

17

mixed nature of the pending petition, Objection A(1) is overruled.

In Objection A(3), petitioner objects "to [the] PF&R's interpretation of [p]etitioner's response," mainly on the ground that the PF&R frames petitioner's contention that counsel went against his wishes in omitting certain claims on state habeas appeal by the PF&R's statement that "habeas appellate counsel overlooked or failed to assert" those claims. See Objections, at 3-4; PF&R, at 26 n.5. Petitioner's objection appears to be that the PF&R's language ascribed less malice or incapability to petitioner's state habeas appellate counsel than petitioner sought to argue. The PF&R used the quoted language while discussing Rule 25(b) of the West Virginia Rules of Appellate Procedure, which states that "a petition for rehearing is granted only in exceptional cases," and that petition must state "with particularity the points of law or fact" the petitioner believes lower courts "overlooked or misapprehended." W. Va. Rules App. Proc. 25(b). Inasmuch as the PF&R was using the rule's language to make clear that there is no allegation that WVSCA "overlooked or misapprehended" certain claims (because, as petitioner argues, his counsel failed to raise them), the PF&R did not misconstrue petitioner's claims. Objection A(3) is overruled.

18

Petitioner's Objection B(I)(1) is two-fold, and in both parts petitioner again objects to the PF&R's "interpretation of [p]etitioner's response." Objections, at 4. First, petitioner notes that at one point, the PF&R states that the petitioner contends that evidence of a "white powdery substance" was admitted through the testimony of Officer Colon. Id. However, petitioner in his objection states that he asserted that such evidence was "introduced during Officer Colon's testimony, but was admitted into evidence during Sgt. Young's testimony." Id. Despite petitioner's contention, the trial transcript makes clear that, at trial, evidence of a bag containing a white powdery substance was introduced through the testimony of Paul E. Colon, the evidence custodian for the relevant police department. State Trial Transcript, 197-212, ECF No. 14-1. Though the state moved to admit the evidence during the testimony of Sgt. Young, see id. at 209:5-15, the PF&R's description of the admission of that piece of evidence is not inaccurate.

Second, the PF&R notes that petitioner complains that, though the state argues the white powdery substance was cocaine, the substance was never tested and "could have been simply face powder, cooking flour, or baking soda." PF&R, at 32 (quoting Federal Habeas Petition, at 5). Petitioner states in Objection B(I)(1) that he was "not personally asserting that the white

19

powdery substance could have been" those three things; rather,
he was simply noting that it had not been tested.  Objections,
at 4-5.  The PF&R directly quoted petitioner's language, and
thus did not inaccurately describe petitioner's position.
Nonetheless, the court notes petitioner's clarification in this
regard.  Because the PF&R did not inaccurately state that which
the objection claims it did, Objection B(I)(1) is overruled.

     In a similar vein, in Objection B(I)(6), petitioner
objects to the "PF&R's summary of the facts to (sic) the case"
with regard to the PF&R's summary of the testimony about the
white powdery substance.  Objections, at 9.  As petitioner
notes, the PF&R, at one point, states that the state trial court
"limited Sgt. Young's testimony to him stating that he received
the 'white powdery substance' on a date certain from Sgt.
Young."  PF&R, at 39 (citing to Trial Transcript, at 199, ECF
No. 14-1).  The PF&R's statement is, of course, incorrect, but
it is a mere scrivener's error.  Indeed, as the PF&R had noted
earlier when summarizing respondent's argument and as the trial
transcript reflects, "the trial court allowed the introduction
of the bag containing a white powdery substance but limited Mr.
Colon's testimony to stating that he received the evidence on a
date certain from Sgt. Young."  PF&R, at 33 (emphasis added);
see Trial Transcript, at 201, ECF No. 14-1.  Because it is clear
the PF&R analyzed the question of admission of the white powdery

substance as if it had properly stated the limitation of Mr.
Colon's testimony, rather than Sgt. Young's, the misstatement
did not change the analysis.  Accordingly, petitioner's
Objection B(I)(6) is not deemed meritorious in that it does not
change the outcome.

In Objection D(3), petitioner, while arguing that
there was insufficient evidence to convict him of conspiracy,
objects to the PF&R's "failure to acknowledge the fact that the
jurors found that there was no firearm being used during the
commission of the crime" and the "fact that [p]etitioner struck
the CI/victim in the head is what caused the CI/victim to 'stop
fighting' which further allowed the [p]etitioner to jerk the
purse from the CI/victim."  Objections, at 16.  The petitioner's
argument, construed broadly and in light of his other arguments
with respect to sufficiency of the evidence, is that because the
jury did not find that a gun was used, the court must discount
all of the testimony of the CI/victim, who testified that there
was a gun.  See Federal Habeas Petition, at 11-12 (arguing
insufficiency of evidence); Pet. Resp. Mot. Summ. J., at 32-33.
However, the PF&R did acknowledge the fact that the jury did not
find that the co-defendant used a firearm during the commission
of the crime.  See PF&R, at 57, 58, 61.  The PF&R nonetheless
concluded that, because it is not the province of a habeas court
to question the jury's determinations of credibility, the fact

21

that the jurors did not find there was a firearm during the
crime does not require finding that the evidence was
insufficient to convict petitioner of first degree robbery.  See
PF&R, at 61 (citing Jones v. Seifert, 808 F.Supp.2d 900, 924
(S.D.W. Va. 2011).

        Petitioner also contended that the PF&R failed to
acknowledge "the fact that [p]etitioner struck the CI/victim in
the head is what caused" the CI to "stop fighting" and enabled
petitioner to take her purse.  Objections, at 16.  By
implication, petitioner argues that it was his striking of the
CI/victim – rather than a purported firearm or conspiracy with
petitioner's co-defendant – that enabled petitioner to take her
purse.  However, the argument that it was only petitioner's
strike to the CI/victim's head that enabled petitioner to take
the purse from her person is unexhausted.  Petitioner did not
make this argument in state habeas proceedings, see ECF Nos. 11-
1 – 11-16, or in his federal habeas petition, ECF No. 2; as the
PF&R concluded, it was raised for the first time in his response
to respondent's motion to dismiss and for summary judgment.  See
Pet. Resp. to Mot. Summ. J., at 30, ECF No. 22; PF&R, at 57.
Inasmuch as this claim is unexhausted, the PF&R had no reason to
thoroughly address it, and the court need not now.  Petitioner's
Objection D(3) is overruled.

In Objection D(4), petitioner objects to the PF&R's conclusion that sufficient evidence existed to convict petitioner of conspiracy to commit robbery because, petitioner notes, "the [PF&R] never pointed out what constituted the agreement," and an "agreement" is a necessary element of conspiracy.  See Objections, 16-17.  Finding that "there is no evidence that the Circuit Court's or WVSCA's determination was contrary to, or an unreasonable application of, clearly established federal law[,] or based on an unreasonable determination of facts," the PF&R concluded that the jury's finding that the petitioner is guilty of conspiracy to commit robbery was not unreasonable.  The PF&R noted the trial court found that "any rational trier of fact could have found that," based on the sequence of events described by the CI and "largely corroborated by the surveillance video evidence," the "co-defendant's direction for the CI/victim to give the purse to Petitioner constitutes the overt act."  PF&R, at 61.

Under state law, to support a conviction of conspiracy, the state must show an agreement between conspirators, which "may be inferred from the words and actions of the conspirators, or other circumstantial evidence, and the State is not required to show the formalities of an agreement." Goard II, at *10 (denying petitioner's state habeas petition) (quoting Syl. Pt. 4, State v. Less, 170 W. Va. 259, 294 S.E.2d

62 (1981)).  Pursuant to that standard, the PF&R found that it was not unreasonable to infer from the actions and circumstantial evidence described above that petitioner and his co-defendant agreed, through their communication and overt acts taken to achieve a common criminal goal, to commit robbery against the CI/victim.  Accordingly, petitioner's Objection D(4) that the PF&R did not identify an agreement is overruled.

   c.   Objections Regarding Ineffective Assistance of Counsel

        Petitioner's remaining Objections in B(I) and B(II) relate to the PF&R's finding that his claims of ineffective assistance of counsel are meritless.  Petitioner's objections arise out of counsel's failure to object at two moments during trial: first, counsel's failure to object to the state's motion to admit into evidence a "white powdery substance" found at petitioner's co-defendant's residence; and second, counsel's failure to object to allegedly improper and inflammatory remarks made by the prosecutor at trial.

        At trial, the state introduced as evidence a "white powdery substance," which was found at the apartment of petitioner's co-defendant "several hours" after plaintiff had sold cocaine to and then stolen a purse from the CI/victim.  See Trial Transcript, 200:14-15, 201-208, 222:7-223:4, ECF No. 14-1. Petitioner was not present when the substance was found by

24

police, but his co-defendant was and claimed ownership of the "white powdery substance." Id. at 219:11-13.  Trial counsel for petitioner's co-defendant objected to the admission of this evidence, but petitioner's counsel did not.  Petitioner's counsel did not object because the primary theory of his case was that it was not the petitioner who was captured on surveillance video of the incident in question. Transcript of Initial Habeas Review Proceedings, Testimony of Petitioner's Trial Counsel Joseph Mosko, at 17:16-24, 25:7-14, ECF No. 11-13 (hereinafter "Mosko Habeas Testimony").  Further, as petitioner's trial counsel argued in his closing argument, petitioner's counsel's theory of the case was that everything found in the co-defendant's apartment was that of the co-defendant — not petitioner — and that "[n]ot a single bit of actual evidence [] ties [petitioner] to" that evidence.  Trial Transcript, 353:17-354:8, ECF No. 14-1.

     To succeed on an ineffective assistance of counsel claim, a petitioner must show (1) "that counsel's representation fell below an objective standard of reasonableness," and (2) that counsel's actions give rise to "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 688, 694 (1984).  "Judicial scrutiny of counsel's performance must be highly deferential," and

petitioner must overcome a "strong presumption" that counsel's conduct "falls within the wide range of reasonable professional assistance." <u>Id.</u>, at 689. West Virginia applies this same two-pronged test to ineffective assistance of counsel claims. Syl. Pt. 5, <u>State v. Miller</u>, 459 S.E.2d 114 (1995).

That deference is "doubly" strong when a federal court sits in habeas jurisdiction under § 2254(d). <u>Harrington v. Richter</u>, 562 U.S. 86, 105 (2011). Under § 2254(d), "the question is not whether counsel's actions were reasonable," "[t]he question is whether there is any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard." <u>Id.</u>; <u>see also Moore v. Hardee</u>, 723 F.3d 488, 496 (4th Cir. 2013). Framed differently, the "pivotal question is whether the state court's application of the Strickland standard was unreasonable." <u>Richter</u>, 562 U.S. at 101.

In Objections B(I)(2) through B(I)(5), petitioner objects to the PF&R's findings that his trial counsel's failure to object to the admission of a "white powdery substance" into evidence did not qualify as ineffective assistance of counsel. <u>See</u> Objections, at 5-9.

Petitioner first objects to the PF&R's adoption of WVSCA's position in <u>Goard II</u> that "trial counsel's failure to object to the admission of the 'white powdery substance' was a

26

tactical decision that did not fall below an objective standard of reasonableness." Objections, at 5. Petitioner argues that counsel's decision not to object "cannot be seen as 'tactical' once the prosecutor implied that the white powdery substance was the same substance that the CI/victim purchased from the [p]etitioner." Objections, at 5. As to this argument, WVSCA found that "because the white powdery substance was not connected to petitioner, it was not outside the broad range of acceptable conduct not to object to its admission." Goard II, at *7. WVSCA further noted that it would "not engage in hindsight or second guess strategic decisions," and thus declined to find "ineffective assistance on this ground when counsel highlighted the claimed lack of connection to further his theory at trial." Goard II, at *7.

To analyze whether this is an unreasonable application of the Strickland standard, Fourth Circuit's decision in Moore v. Hardee, 723 F.3d 488 (2012) is guiding. There, the court reviewed, inter alia, an ineffective assistance of counsel claim based upon trial counsel's failure to offer expert testimony regarding the fallibility of eyewitness testimony when trial counsel had impeached the eyewitness during cross-examination. Hardee, 723 F.3d at 493. The state court found on habeas review that trial counsel was not ineffective under Strickland. Id. The court, noting that "[r]are are the situations in which 'the

wide latitude counsel must have in making tactical decisions'
will be limited to one technique or approach," held that the
state court did not unreasonably apply the Strickland standard
when it identified trial counsel's strategy of selecting which
evidence to present in furtherance of a specific theory as
reasonable.  Id., at 497 (quoting Richter, 562 U.S., at 106).

        The court today, constrained by sitting only in habeas
jurisdiction, cannot find that the state's ruling is an
"unreasonable" application of the Strickland standard.  It is
"well within the bounds of a reasonable judicial determination
for the state court to conclude that defense counsel," Richter,
562 U.S., at 106, pursuing a strategy to convince the jury that
petitioner was not the person who robbed the CI/victim and had
no connection to the white powdery substance found at his co-
defendant's apartment, acted "within the wide range of
reasonable professional assistance," Strickland, 466 U.S., at
689, when he did not object to the introduction and admission of
that white powdery substance as evidence.  Indeed, as WVSCA
found, in furtherance of that strategy, petitioner's trial
counsel offered significant evidence and testimony seeking to
impeach the CI/victim's identification of petitioner and argued
that petitioner was not connected to the white powdery substance
at all.  See Goard II, at *7.  "Counsel was entitled to
formulate a strategy that was reasonable at the time and to

balance limited resources in accord with effective trial tactics
and strategies." Richter, 562 U.S. at 107.

WVSCA's application of the first prong of the
Strickland standard, which was not unreasonable, is sufficient
to find that trial counsel was not constitutionally deficient,
and the court thus does not need to delve into WVSCA's
application of the second prong of the Strickland standard.  See
Hardee, 723 F.3d at 500 ("Pursuant to Strickland, 'there is no
reason for a court deciding an ineffective assistance claim to
determine 'both components of the inquiry if the defendant makes
an insufficient showing on one.'") (citing Strickland, 466 U.S.,
at 697).  Inasmuch as, WVSCA's application of the Strickland
standard was not unreasonable with regard to petitioner's claims
that counsel was ineffective by failing to object to the
admission of the white powdery substance, petitioner's
objections to the PF&R's same conclusion, Objections B(I)(2),
B(I)(3), B(I)(4), and B(I)(5), are overruled.

The court notes that petitioner embeds in Objection
B(I)(4) a specific argument that counsel was ineffective by
failing to object to the admission of the white powdery
substance inasmuch as trial counsel's actions also failed to
preserve the issue of admission of that evidence for direct
appeal.  The PF&R did not address this claim because it had

29

never previously been raised.  The court today declines to
address it inasmuch as it has not been exhausted.

Additionally, in Objection B(I)(5), petitioner objects
to the PF&R's analysis that trial counsel's failure to object to
the white powdery substance was harmless, arguing that the
"question isn't about how the ruling would have been different."
Objections, at 8 (emphasis in original).  This objection is
meritless because, under the second prong of the Strickland
standard, the question is whether "there is a reasonable
probability that, but for counsel's unprofessional errors, the
result of the proceeding would have been different."
Strickland, 466 U.S., at 694.  The PF&R correctly adopted that
standard.  Objection B(I)(5) is overruled.

Petitioner also asserts two objections to the PF&R's
treatment of his ineffective assistance of counsel claims with
regard to petitioner's claims that the "prosecutor deliberately
misrepresent[ed] the evidence."  Objections, at 10.  In
Objection B(II)(1), petitioner objects to the PF&R's "failure to
mention and address" those claims.  This objection is overruled
inasmuch as the PF&R thoroughly addressed those claims.  See
PF&R, 39-55.

In Objection B(II)(2), petitioner objects to the
"PF&R's finding that [p]etitioner['s] claims were improperly

pled." Objections, at 10. Petitioner asserts that the "PF&R

contends that [p]etitioner completely failed to specifically

identify any of the 'improper or highly prejudicial' statement

(sic) made of (sic) the prosecutor." Id. As an initial matter,

the PF&R does state that "[p]etitioner [] failed to specifically

identify any of the 'improper or highly prejudicial' statements

made by the prosecutor." PF&R, at 44. This statement is true:

in Subpart E of Ground 1, petitioner alleges that the prosecutor

made remarks that were improper or prejudicial for a variety of

listed reasons, but petitioner failed to specifically identify

any statements by the prosecutor that were improper or

prejudicial. Analyzing the pleadings under a motion to dismiss

standard, petitioner's claim would be dismissed. See PF&R, at

43-44. Even once petitioner identified specific statements in

his response to the respondent's Motion to Dismiss and for

Summary Judgment, the PF&R notes that petitioner's arguments

"focus solely upon how the above comments allegedly resulted in

prosecutorial misconduct" and "wholly fails to specifically address

the ineffective assistance of counsel claim tied to this claim."

PF&R, at 45. Nevertheless, the PF&R considered the merits of

petitioner's claim that WVSCA unreasonably applied the

Strickland standard with respect to his trial counsel's failure

to object to statements made by the prosecutor, as later

identified by petitioner. See PF&R, 41-43 (listing the

statements that petitioner explicitly stated were improper in
his response) (citing Pet. Resp. to Mot. Summ. J. 16-25).  The
PF&R justifiably concluded that, as a matter of law and after
considering the record, WVSCA did not unreasonably apply the
Strickland standard to petitioner's claim of ineffective
assistance of counsel with regard to the prosecutor's allegedly
improper statements.

        Accordingly, all of petitioner's objections with
regard to the PF&R's treatment of his ineffective assistance of
counsel claims — Objections B(I)(1), B(I)(2), B(I)(3), B(I)(4),
B(I)(5), B(I)(6), B(II)(1), B(II)(2) — are overruled.


  d.   Objections Regarding Sufficiency of Evidence of Conspiracy

        The remainder of petitioner's objections to the PF&R —
Objections D(1), D(2), D(5), and D(6) — relate to the PF&R's
conclusions regarding Ground 3, "Insufficient Evidence," of
petitioner's Federal Habeas Petition.  See Objections, 10-16
(Objections D(1) and D(2)), 17-18 (Objections D(5) and D(6)).

        Objections D(1), D(2), and D(6) each object to the
PF&R's finding that it was not an unreasonable application of
the standards required under the Due Process Clause of the
Fourteenth Amendment for WVSCA to find that the evidence was

sufficient to support the jury's determination that petitioner was guilty of conspiracy to commit a robbery in the first degree. <u>See</u> Objections 10-18. Though phrased slightly differently in each objection, petitioner essentially argues that the evidence was insufficient to reasonably support a conviction of that offense. The court reviews this question <u>de novo</u>. <u>See</u> <u>Page v. Lee</u>, 337 F.3d 411, 416 n.3 (4th Cir. 2003).

Under the Due Process Clause of the Fourteenth Amendment, a defendant is protected "against conviction 'except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.'" <u>Jackson v. Virginia</u>, 442 U.S. 307, 315 (1979) (quoting <u>In re Winship</u>, 397 U.S. 358, 364 (1970)). It is the "responsibility of the jury – not the court – to decide what conclusions should be drawn from evidence admitted at trial." <u>Cavazos v. Smith</u>, 565 U.S. 1, 2 (2011). On direct review of a conviction, a jury's verdict may be overturned based on insufficiency of evidence "only if no rational trier of fact could have agreed with the jury." <u>Id.</u> This deference to the outcome of the state court is again doubly strong on federal habeas review: "A federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only

if the state court decision was 'objectively unreasonable.'"
Id. (quoting Renico v. Lett, 559 U.S. 766, 773 (2010)).

It is thus necessary to establish the elements that must have been established to convict petitioner of conspiracy to commit robbery in the first degree.  Under West Virginia law, in relevant part, it is "unlawful for two or more persons to conspire . . . to commit any offense against the state."  W. Va. Code § 61-10-31.  To prove conspiracy under that statute, the state "must show that the defendant agreed with others to commit an offense against the State and that some overt act was taken by a member of the conspiracy to effect the object of that conspiracy."  Syl. Pt. 4, State v. Less, 294 S.E.2d 62 (W.Va. 1981).  "The agreement may be inferred from the words and actions of the conspirators, or other circumstantial evidence, and the State is not required to show the formalities of the agreement."[2]  Id., at 67.  State law defines robbery in the first degree as "(1) [c]ommitting violence to the person, including, but not limited to, partial strangulation or suffocation or by striking or beating; or (2) us[ing] the threat of deadly force by the presenting of a firearm or other deadly weapon."  W. Va. Code § 61-2-12.  To convict petitioner, the State must have

---

[2] The court notes that petitioner, when defining the elements of conspiracy in his objections, often cited to the definition of conspiracy under federal law, 18 U.S.C. § 371, rather than the applicable state law.

proved that the petitioner is guilty of conspiracy to commit robbery beyond a reasonable doubt.

On habeas review, the lower state court found that, considering the trial testimony and evidence in a light most favorable to the prosecution, the evidence was "sufficient to support [p]etitioner's conviction for conspiracy to commit the felony of robbery."  Order Denying and Dismissing Petition 38, ECF No. 11-14.  The court found that "the video evidence showed various moments that a rational juror could have reasonably determined was proof of communication and direction during a common scheme or plan between the Petitioner and his co-defendant," and that such evidence taken in conjunction with the CI/victim's testimony "was more than sufficient to sustain Petitioner's convictions."  Id.

On review, WVSCA affirmed the lower court's conclusion, finding that the evidence, especially the CI/victim's testimony coupled with the corroborating video surveillance evidence, "when viewed in the light most favorable to the State and crediting all inferences and credibility assessments in the State's favor, was sufficient to support petitioner's conspiracy to commit robbery conviction" under Less.  Goard II, at *10.

On habeas review, this court's province is not to
determine whether any reasonable trier of fact could have
convicted petitioner based upon the evidence; rather, it is to
determine whether the state court's analysis of whether any
reasonable trier of fact could have so convicted petitioner was
reasonable.  See Cavazos, 565 U.S., at 2.  With that limiting
constraint, it appears clear that reasonable jurists could
conclude that WVSCA did not unreasonably determine that the
evidence in this matter was sufficient to convict petitioner.
The evidence described above, viewed "in a light most favorable
to the prosecution," Jackson v. Virginia, 443 U.S. 307, 319
(1979), is sufficient to find that a reasonable jurist would
find that any reasonable trier of fact could determine that
petitioner is guilty of conspiracy to commit robbery in the
first degree.  To specifically address petitioner's various
contentions that the PF&R never identified an "agreement" to
undergird the conspiracy conviction, the court notes that the
Circuit Court found sufficient evidence of "communication and
direction during a common scheme or plan between [petitioner]
and his co-defendant," Order Denying and Dismissing Petition 38.

The WVSCA similarly observed that while trying to rob
the CI/victim, "petitioner informed [his co-defendant] that the
CI was wearing a wire," the co-defendant "demanded that the CI
give petitioner the purse, [] the CI stopped resisting, and []

petitioner succeeded in taking the purse and its contents."
Goard II, at *10.  Based upon these facts supported by evidence,
neither the lower court nor the WVSCA was unreasonable in
inferring an agreement from the words and actions of petitioner
and his co-defendant.  Accordingly, the court finds that WVSCA
did not unreasonably find petitioner's insufficient evidence
claim meritless under the requirements imposed by the Due
Process Clause of Fourteenth Amendment.  Petitioner's Objections
D(1), D(2), and D(6) are overruled.

In Objection D(5), petitioner objects to "the PF&R's
failure to acknowledge that the jury did not find CI/victim's
(sic) testimony as to the co-defendant pulling a handgun and
directing the CI/victim to give [p]etitioner the purse
truthful."  Objections, at 17-18.  Therein, petitioner argues
that the fact that the jury did not find that a gun was used
requires the court to discount all of the CI/victim's testimony
and thus find that there is insufficient evidence of conspiracy
to commit robbery.  See Objections, at 17-18.  As an initial
matter, the PF&R did acknowledge this argument, finding it
unpersuasive.  PF&R, at 61.

It is the duty of the jury to determine the
credibility of witnesses, the credibility of their testimony,
and the weight to ascribe any given piece of evidence.  See

Jackson, 443 U.S. at 319 (requiring a federal habeas court reviewing the sufficiency of the evidence to "give[] full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony").  The presence of a firearm is not necessary to find a person guilty of robbery in the first degree.  See W. Va. Code § 61-2-12.  Indeed, petitioner has acknowledged that he has otherwise "committed violence to the person" of the CI/victim by grabbing and hitting her.  Id.; see e.g., Pet. Resp. to Mot. Summ. J. 30 ("The record reflects . . . [p]etitioner then struck the victim which caused her to 'give up fighting' for the purse.").  That the jury chose to credit some parts of the CI/victim's testimony to support a conspiracy conviction but not others when finding a lack of evidence of the presence of the firearm does not negate the sufficiency of the evidence to support a conspiracy conviction.  See Lucas v. McBride, 505 F.Supp.2d 329, 358 (N.D.W. Va. 2007) ("2007) ("The issue raised by the petitioner in his petition to support his claim that there is insufficient evidence to support his conviction are all related to the credibility of the witnesses and the weighing of evidence. Those are issues that were resolved by the jury at trial and are not within the province of federal habeas review.").  Thus, petitioner's Objection D(5) is overruled.

V.   Conclusion

For the foregoing reasons, petitioner's objections to the PF&R are overruled.  Accordingly, it is ORDERED that the PF&R be, and hereby is, adopted by the court and incorporated herein.  It is, therefore, ORDERED as follows:

1.   Petitioner's Motions for Stay and Abeyance, ECF Nos. 18 and 23, are DENIED; and

2.   Respondent's Motion to Dismiss and for Summary Judgment, ECF No. 14, be GRANTED.

The Clerk is directed to transmit copies of this order to any unrepresented parties, all counsel of record, and the United States Magistrate Judge.

Entered: March 29, 2024

_____
John T. Copenhaver, Jr.
Senior United States District Judge